Staples J.
delivered the opinion of the court.
This is a controversy growing out of an alleged mistake in a written agreement for the sale of certain real property. By the terms of this agreement, Thos. G. Mauzy sold to his brother Joseph hT. Mauzy, “his interest in the property known as the ‘John hTicholas farm,’ together with all his undivided interest in the lands now owned by the said parties.” At the date of the sale the vendor and vendee each owned an undivided fourth in “the hTicholas farm,” in several tracts of mountain land, and also in a small lot upon which was situated a mansion house and store-house, known as the “Montevideo property.”
It is claimed by.the vendor, that the “Montevideo property” was not included in the sale. This is admitted by the purchaser; and the fact is fully proved by the draftsman of the instrument. He states that *645 the contract was well understood by him; that it did not include the “ Montevideo property,” but related ■exclusively to the Nicholas farm and the mountain lands; that if in law the word “land or lands” embraces a store and mansion house on a small lot almost covered by the buildings, he used the word in that contract by mistake, or by mistake failed to except the “Montevideo property;” as it was not intended to be embraced in the contract. And his recollection is clear that he did not understand the word land or lands as embracing anything but the mountain lands.
It will thus be seen that there is no controversy between the vendor and the purchaser. But the latter, it seems, is insolvent, and his creditors having liens by .judgment, insist that the terms of the contract necessarily include the “Montevideo property,” and that parol testimony is inadmissible to vary or contradict the plain language of the instrument.
It will perhaps conduce to a clearer understanding ■of the merits of the question, to consider the case as if the controversy was between the vendor and purchaser exclusively—the one seeking to reform the written agreement by parol proof of the mistake, and -the other resisting it. That it is competent for a court of equity to correct a mistake in a deed or other writing upon parol evidence, cannot now be questioned. No branch of equity jurisdiction is more fully established than this: none is sustained by a greater array •of authorities, English and American.
In 1 Story Eq. Ju., s. 152, the doctrine is laid down as follows: “ One of the most common classes of cases in which relief is sought in equity on account of mistake of facts, is that of written agreements, either executory or executed. Sometimes by mistake the written agreement contains less than the parties in *646 tended; sometimes it contains more; sometimes it simply vanes from their intent by expressing some-different in substance from the truth. In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract so as to make it conformable to the precise intent of the parties.
A court of equity would be of little value if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs, contrary to the intention of the parties. It would be to allow an act originating in innocence to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake to resist the claims of justice under the shelter of a rule framed to prevent it. In a practical view, there would be as much mischief done by refusing relief in such cases as there would be introduced by allowing parol evidence in all cases to vary written contracts.” § 155.
In Gillespie v. Moon, 2 John. Ch. R. 585, 596, Chancellor Kent said: “I have looked into most if not all of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing, founded on mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively by bill or as a defence. Accordingly he gave relief against a deed conveying two hundred and fifty acres by metes and bounds, upon parol proof that the vendor only contracted for the sale of two hundred acres.
The English authorities on this subject are no less decisive than the American. The cases of Calverley v. Williams, 1 Ves. R. 210; of Thomas v. Davis, cited in *647 1 Sugd. on Ven. 172-3, margin, are very similar to the ... . „ , present ease m their main features.
These, and a multitude of other cases which may cited, show it is the constant practice of the equity courts to admit parol evidence of mistake of fact, and . . though such evidence is in direct contradiction of the express terms of the deed or other writing. Kerr on Fraud and Mistake, 418-423. The only limitation upon this doctrine is, that the evidence in all such cases must be very strong and clear, such as to leave no fair and reasonable doubt upon the mind, that the writing does not correctly embody the real intention of the parties. If therefore the controversy here was between the vendor and purchaser, parol evidence is clearly admissible to establish the alleged mistake in the written agreement, even against the answer of the purchaser.
There is however no contest in this case between vendor and purchaser. As already stated, they are agreed in their version of the contract. The question is, whether the appellees as creditors can object to the admission of the parol proof, when the parties to the contract make no such objection. It is true that the judgments constitute a lien upon the interests of Joseph ÍT. Mauzy in the real estate. But the question still recurs, what is the extent of that interest? The appellees may rely upon the instrument of writing as very strong and satisfactory evidence upon that point; they may require that the mistake shall be very clearly established; but they cannot rely upon the writing as conclusive when the parties to it do not insist upon it. They cannot claim the benefit of an estoppel by which they are not bound. Upon this point the case of Strader v. Lambeth, 7 B. Mon. R. 589-90, is a direct *648 authority. In that ease the Supreme court of Kentucky was of opinion that in an action at law, in a con-with strangers to the writing, the parties to it are not themselves estopped to explain or contradict by parol its terms or recitals.
In Alexander & Co. v. Newton & als., 2 Gratt. 266, it was held that parol evidence was admissible, to show that it was the intention of the grantor, in a deed of trust, that the deed should be so drawn as to secure a preference in the payment of the debts to particular creditors, and the omission to insert such a provision proceeded from the mere mistake of the draftsman. The mistake was accordingly corrected against bona fide creditors claiming an equal participation in the trust subject.
The great difficulty encountered by courts of equity, in reforming written agreements upon parol proof, is the weight justly due to the answer of the defendant denying the mistake. But this difficulty is removed when the adverse party admits the existence of the mistake, and is willing to its correction. In such case it is said the court does not overturn any rule of equity by varying the deed, because it is an equity de hors the deed. 1 Story’s Eq. Jur. 156; Attorney General v. Sitwell, 1 Younge & Coll. B. 559-582. Had the vendor here sued the purchaser to reform the agreement before the creditor’s suit was instituted, a court of equity, upon the answer of defendant admitting the mistake, would have no difficulty in decreeing the correction. In such case the decree, if not conclusive, would certainly have furnished prima facie evidence of the rights of the parties even against the creditors. The latter might show collusion or fraud between the vendor and purchaser. Whether they would be per *649 mitted to re-open the whole case, in order to show by extrinsic evidence that in fact no mistake was committed, it is unnecessary now to decide.
Such evidence would perhaps, in its very nature, tend to the establishment of fraud or collusion.
Here the question arises in a suit by the creditors, ■asserting their liens upon the property. The vendor, in a bill filed by him, treated by consent of parties as an answer, claims that the written agreement does not express the real contract. .The affidavits of the purchaser and the draftsman; by like consent treated as depositions regularly taken, fully sustain the answer. Ho suspicion or discredit is thrown upon these witnesses, nor is it even attempted. Their version of the matter derives some confirmation from the language of the agreement. “ The Montevideo property” was as well known by its appellation as the “Hicholas farm:” And yet the latter is expressly mentioned by name, while no reference whatever is made to the former.
It is difficult to understand the reason of this omission, except upon the assumption that this property (the Montevideo) was not included in the sale, and the word “.lands,” used in the article of agreement, referred to the mountain lands, jointly owned by the parties.
The appellees have adduced no evidence whatever upon the matter in issue. They have not attempted to impeach the testimony of the appellant; they have not even attempted to throw any light upon the conduct, the pretension or claims of the vendor, since the sale was made. This may have resulted from an undue confidence in their position, that parol evidence is wholly inadmissible in such cases; or, it may be, *650 they cannot successfully controvert the evidence adduced by the appellant.
Whatever may have been the reasons, the cause is. regU]ariy before us for a hearing as it was before the Circuit court, and we must decide it upon the pleadmgs and proofs as they appear m the record.
The decree must be reversed with costs, and the case-remanded for further proceedings in accordance with the views herein expressed.
The decree was as follows:
This day came again the parties by their counsel,, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing, and filed with the record, that the Circuit court erred in holding that the appellant, Thomas G. Mauzy, sold to Joseph 1ST. Mauzy his one-fourth interest in the real estate known as the “Montevideo-property.” This court being satisfied, from the proofs, taken and filed in the cause, that said property was. not included, nor intended to he included, in the sale evidenced by the written agreement, dated 21st August 1868. It is therefore adjudged, ordered and decreed, that the decree of the said Circuit court be reversed and annulled, and that the appellees do pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here.
And this court proceeding to render such decree as. the Circuit court ought to have rendered, it is ordered and decreed, that so much of the bill of the complainants as seeks to subject to sale the one-fourth interest in the “Montevideo property” now claimed by the said Thomas G. Mauzy, as belonging to Joseph N *651 Mauzy under the agreement aforesaid, be and the same is hereby dismissed; and that the complainants pay to the defendant, Thomas G. Mauzy, his costs by him expended in this suit; all of which is ordered to be certified to the said Circuit court of Bockingham county.
Decree reversed.