# 𝔚ytheville.

## FRENCH v. CHAPMAN.

### July 23d, 1891.

1. DEEDS—*Mistake—Reformation—Parol evidence.*—Courts of equity may correct mistakes in deeds or other writings upon parol evidence. But the mistake must have been mutual, or, if upon one side only, accompanied by fraud or other inequitable conduct on the other side. And the evidence of the mistake must be clear and satisfactory, leaving but little, if any, doubt of the mistake.

2. IDEM—*Case at bar.*—The evidence in the record adduced to establish the mistake alleged to have been made in the deed in the bill mentioned;
HELD:
    Wholly insufficient to justify its reformation as prayed for.

3. IDEM—*Evidence—Hearsay.*—Declarations of defendant's mother, though she was entitled to dower in the land alleged to have been omitted from the deed by mistake, which were made in his absence, are hearsay and inadmissible.

Appeal from decree of circuit court of Giles county, rendered March 14th, 1887, in a suit wherein William H. French was complainant, and James W. Chapman was defendant.

The object of the suit was to have a certain deed from the said Chapman and wife to said French, dated 27th day of April, 1872, so reformed as to embrace our moiety of a certain fifty-acre tract of land alleged to have been omitted, by mistake or otherwise, in drawing said deed.

The case, as made by the bill, answer and exhibits, is as follows:

The bill alleges that on the 27th day of April, 1872, mutual deeds were executed by and between the said William H. French and wife and said James W. Chapman and wife, which

were intended to carry into effect, and to perfect an exchange of lands before that time made between them, the said French giving in exchange to said Chapman his tract of about 400 acres, on Wolf creek, in Bland county, for all the lands owned by said Chapman, on Wolf creek, in Giles county; and, with his bill the complainant exhibits a copy of said deed, marked " A." But the bill sets forth that there is a mistake in said deed, greatly to the prejudice of said complainant, French, the effect of which, if not corrected, will deprive him of title to the most valuable portion of the land which he was to receive in said exchange from said Chapman, that by the terms of his contract he was to receive from said Chapman a deed conveying to him *all* the land owned by Chapman, on Wolf creek, in Giles county, and that said deed was intended by both parties to embrace *all* of said lands.

The bill then sets forth that said Chapman, at the time of said contract for exchange and at the time of the execution of said deed, was the owner of an undivided moiety in three tracts of land which he owned jointly with his sister, one Sarah T. Chapman, two of which, to-wit: a tract of eighty-four acres, and a tract of 1,350 acres, descended to them from their grandfather, James Chapman, through their father, John W. Chapman, who was the only child and heir at law expectant of said James Chapman, and who died before his father, the said James Chapman, leaving said James W. and Sarah L. Chapman, as the only heirs at law of their said grandfather, James Chapman; and that said James W. Chapman owned an undivided moiety in another tract of fifty acres, contiguous to said other two tracts, and upon which is situate the mansion house and other valuable buildings and improvements, which said tract, it is alleged, is by far the most valuable part of said land, and is also jointly owned by said James W. and Sarah L. Chapman, and was inherited by them from their great-grandfather, John Chapman, deceased, through their father, the said John W. Chapman, as follows :

The said John Chapman, by his will, a copy of which is filed with the bill, and was probated in Giles county in 1847, devised said fifty-acre tract to said James Chapman for life with remainder in fee, after his death, to his said son, John W. Chapman, who died before his father, James Chapman, the life-tenant, and that at the death of said life tenant, the fee simple vested in said James W. and Sarah L. Chapman, and that the said James W. was the owner of an undivided moiety thereof at the date of said deed from him to the complainant, William H. French, his grandfather, the said James, being then dead. And the bill then sets forth that the language of said deed only conveys to the complainant the land descended to the defendant, James W. Chapman, from his grandfather, the said James Chapman, deceased, but omitting the moiety owned by him in said fifty-acre tract, which, it is alleged, constituted one of the chief inducements to the complainant to make said exchange; that the omission was the result of mistake, and that the mistake was recently discovered, when the complainant, French, immediately called upon the defendant, Chapman, to cancel it, but that he fraudulently declines and refuses to do so. And the prayer of the bill is that said James W. Chapman be made a party defendant thereto, and required to answer its allegations on oath; that said omission and mistake in said deed be corrected and said Chapman required to convey said moiety of said fifty-acre tract to complainant, and for general relief.

The defendant, James W. Chapman, answered the bill, and denies most emphatically that there is any mistake in his deed to complainant, referred to in and exhibited with the bill, and says that the deed was prepared according to, and in exact conformity to the contract between complainant and himself. And he says that he has complied fully with the terms of his contract, by the execution of the deed conveying the land which descended to him from his grandfather, James Chap-

man, deceased. He denies that he ever agreed to convey to complainant all the land owned by him (respondent) which lies in Giles county, on Wolf creek, and he denies that said deed was intended to convey any more land than is described therein. He denies that he fraudulently declined and refused to correct the deed referred to in complainant's bill; because, he says, no correction was necessary or due to complainant, the deed being in perfect conformity with the agreement between the parties ; that the deed was accepted and placed on record by the complainant, and that respondent is advised that complainant is estopped from denying its correctness, or varying the terms thereof. And he denies that he ever sold to complainant his moiety in the land which descended to him from John Chapman, deceased, or that it was intended to be embraced in the deed.

Numerous depositions were taken in the cause by both parties, and the same came on and was heard at the November term, 1887, when, after bringing the cause on to be heard, upon the bill of complainant and exhibits therewith filed, the demurrer of respondent to complainant's bill and joinder in said demurrer, the answer of James W. Chapman and replication thereto, depositions of witnesses theretofore filed in the cause, the decrees and orders theretofore entered therein, together with all the papers formally read, and arguments of counsel, the court entered its decree as follows : "On consideration whereof the court doth overrule said demurrer, and the court being of opinion that complainant, William H. French, under the pleadings and evidence in the cause, has failed to sustain the allegations contained in his bill, and that the evidence does not establish any mistake in the deed from James W. Chapman to William H. French, bearing date the 27th day of April, 1872. It is therefore adjudged, ordered and decreed that the complainant's bill be dismissed, and that the respondent, James W. Chapman, recover of the said William H. French his costs," &c. From this decree the case is here on appeal.

*F. S. Blair* and *Williams Brothers*, for appellant.

*Phlegar & Johnson*, for appellee.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

The simple question for decision by this court is, did the circuit court err in holding, as it did by its decree, that the complainant, W. H. French, failed to sustain the allegations in his bill; that the evidence did not establish any mistake in the deed from James W. Chapman to said French, bearing date the 27th day of April, 1872, and in dismissing said complainant's bill? After a most careful scrutiny of all the facts disclosed by the record, we are clearly of the opinion that said decree is without error.

The contest here is between the parties to the contract exclusively—the one seeking to reform the deed of April 27th, 1872, by parol proof of mistake, and the other resisting it upon the ground that there was no mistake. It will not be denied that it is entirely competent for a court of equity to correct a mistake in a deed or other writing upon parol evidence. Hence, in *Mauzy* v. *Sellars*, 26 Gratt. 641, Judge Staples, quoting with approbation the language of Chancellor Kent in *Gillespie* v. *Moore*, 2 John. Ch. R. 585, 596, says: " I have looked into most, if not all, of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against *any deed* or *contract* in writing, founded on mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively by bill or as a defence." So, in 3 Pom. Eq. Jur., § 1376, p. 413, it is said : " Equity has jurisdiction to reform written instruments in but two well defined cases : (1) Where there is a mutual mistake—that is, where there has been a meeting of

minds, an agreement actually entered into, but the contract, deed, settlement or other instrument in its written form, does not express what was really intended by the parties thereto; and (2) where there has been a mistake, of one party, accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties."

But while the jurisdiction of a court of equity to reform written instruments is thus clearly established, there are certain requisites with which the party invoking this power of a court of equity must comply, or else the relief sought will not be granted:

First. It must appear that the mistake was mutual. This proposition is too well established to be now questioned. Pom. Eq. Juris., Vol. III, p. 413; 5 Wait's Acts & Def. 441, 443; 7 Wait's Acts & Def. 328; *Hoback* v. *Kilgore*, 26 Gratt. 442; *Massie's Adm'r* v. *Heiskell's Trustee*, 80 Va. 801.

Second. The evidence of the mistake "must be clear and satisfactory, leaving but little, if any, doubt of the mistake." 7 Wait's A. & D., p. 327. It "must be made out by the clearest and most satisfactory testimony." 2 Minor, p. 701 (side p. 625). The evidence in all such cases must be very strong and clear, such as to leave no fair and reasonable doubt on the mind that the writing does not correctly embody the real intention of the parties." *Mauzy* v. *Sellars*, *supra*; 2 Pom. Eq. Juris, § 859, p. 325; *Carter's Trustee* v. *McArtor*, 28 Gratt. 360.

Third. The burden of proof is on the appellant, and mere preponderance of evidence will not suffice. *Carter's Trustee* v. *McArtor*, *supra*; 2 Minor, p. 701 (side p. 625); 5 Waite, p. 442.

In the light of these well-established principles let us turn to the evidence and see whether it meets the requirements of the rules above stated, and in doing so let it be kept in view that a mere preponderance of evidence is not sufficient to justify the court in reforming the deed in question.

The bill calls for an answer on oath, and the defendant so answered, denying every material allegation in the bill. Neither the bill nor the answer mentions specifically that there was at the time of the agreement for the exchange of lands a written agreement; but it turns out in evidence that the agreement, which was prior to the deed in question, was reduced to writing, and was not only written by the complainant, William H. French himself, but was, with the assent of the defendant, Chapman, placed in the hands of one Joshua G. French for safe-keeping. This Joshua G. French was introduced as a witness for the complainant, but he deposes that he never read the paper; that it was lost, and he knows nothing of its contents. The complainant, French, testifies that that paper included the land in controversy; but the defendant, Chapman, in his answer and in his deposition, swears positively that it was not so included and was never intended to be. This is all the evidence in respect to the contents of the original written agreement; and thus far the complainant signally fails to prove his case. Moreover, it appears in evidence—indeed it is not disputed—that the deed in question was written by George W. Easley, the clerk of Giles county, at the instance, by the direction, and in the presence of the complainant, French, the defendant, Chapman, being absent and knowing nothing about it until it was presented to him by the complainant, and he executed and acknowledged it and delivered it to complainant, who accepted it and placed it on record. Is it credible that a deed thus prepared in the presence and by the direction of the complainant varied in any particular from the original agreement which was written by the complainant himself? We think not. But, in the face of these cogent facts and circumstances, the complainant (appellant here) seeks to establish that there was a mutual mistake, and he strives to uphold this contention by the testimony of the scrivener, and some nineteen other witnesses, to whom it is claimed the appellee made certain declarations amounting

to admissions by the appellee that in the contract for exchange of lands the land in controversy was included. But in this contention the appellant is not sustained. Judge Easly, the · scrivener, who was then the clerk of the county, and not a lawyer, does not sustain him, but only gives his thoughts and impressions, which must have been acquired from the appellant himself, as he does not pretend to have learned anything from the appellee, who was not present when the deed was written, and gave no directions touching the matter.

As to the other witnesses who testify as to conversations with the appellee in respect to the exchange of lands, it is only necessary to say that their testimony is simply negative in character. In other words, they respectively testify that while they had frequent conversations with the appellee, they never heard him say anything about reserving any land. And such is the testimony of the great bulk of the witnesses introduced on behalf of the appellant. Such testimony by no means comes up to the reasonable and just requirements of the rules above laid down. It cannot be said that such evidence establishes that there was a mutual mistake, much less that it is strong and clear evidence that there was such mistake—so strong and clear as to leave no fair and reasonable doubt of the fact. It must, therefore, be discarded as worthless.

Among the large number of witnesses examined on behalf of the appellant are Alexander Cooper and his son, Lewis Cooper. Alexander Cooper is asked this question: " You will please state if you lived near the William H. French land in Bland, to which J. W. Chapman removed, at the time of his removal and sometime afterwards; if so, please state what, if anything, you heard the said Chapman say about what land he had sold to William H. French, in Giles, and fully what he said about it?" He answered: "I lived in about five hundred yards of J. W. Chapman; I lived there two years after he moved to Bland; I heard him say that he traded his interest in that land his mother lived on; he went on and talked a

good deal, and appeared to be dissatisfied for some time after; sometimes he appeared to get perfectly satisfied, and said he was at least, and said he would not swap back even with Mr. French."

Second question: "In your conversation with said Chapman, did he say he had reserved any of said land on Wolf creek, in Giles county, in his trade with French?"

Answer: "Not that I heard at all."

This is the entire deposition of Alexander Cooper. It is composed of two questions and answers. The same two questions and similar answers constitute the deposition of Lewis Cooper. It will be seen that neither of these witnesses refer in any way to the interest of James W. Chapman in the eighty-four-acre tract, and the thirteen hundred and fifty-acre tract embraced in the deed from him to French, but both of them confine themselves to the interest of James W. Chapman in the fifty-acre tract in controversy; so that their statement, taken literally, confines the agreement for exchange of lands to the fifty-acre tract alone as the land which Chapman gave in exchange for French's land in Bland county. It will be observed, too, that Alexander Cooper says in substance that he had repeated conversations with the appellee, Chapman, but he details nothing except the pretended declaration of Chapman that his interest in the fifty-acre tract in controversy was the land given in exchange for the land of French in Bland county. The statement is fragmentary, irrelevant, and of no value. No man's property rights would be secure if such loose, disjointed and selected parts of conversations could be taken as sufficient to reform and insert into a solemn deed between contracting parties new provisions working a vital change in the contract, and especially when the deed was written by the direction and under the supervision of the party seeking to reform the instrument, and when there is no satisfactory evidence that the deed is not in strict conformity with the original agreement.

Again, the appellee's mother, Rhoda, during her widowhood, intermarried with one Isaac French, and she was entitled to dower in the fifty-acre tract in controversy, and lived thereon with her son, the appellee, up to the time that he exchanged his other lands with the appellant for his land in Bland county; and when the appellee moved to the French land he left Isaac French, his step-father, and his mother, Rhoda, in possession of the fifty acres in controversy. And the appellant, in his deposition, states that when he moved to Giles he moved into a house *near* the land he got in exchange from the appellee. Yet the appellant introduced as a witness on his behalf one James F. Hare, who deposed as to declarations made to him by Mrs. Rhoda French, the mother of the appellee, to the effect that the interest of her son, the appellee, in the fifty-acre tract was embraced in the contract of exchange. It is not pretended that such declarations by Mrs. Rhoda French were made in the presence of her son, the appellee. The testimony was mere heresay and inadmissible. Doubtless the court disregarded or rejected it, and properly so. Moreover, Mrs. Rhoda French was living, and gave her deposition in this cause; so that if she said to James F. Hare what he testified to, the matter could have been established by her rather than in the illegal way resorted to.

But Mrs. Rhoda French acts an important part in this controversy, but not in accord with appellant's claim. It appears in evidence that the appellant, after the exchange of lands, moved a house from the fifty-acre tract in controversy, and, at the instance of the appellee, her son, she (Mrs. Rhoda French) forbade the removal of the house.

There is some other evidence intended to show that appellant took and held undisputed possession of the land in controversy from the time of the exchange of lands between him and the appellee; but a careful examination shows that this insistance is not upheld by the evidence. Taken altogether there is not even a preponderance of evidence in favor of the

appellant's claim; and if there was only a preponderance, it would not suffice under the rules applicable in such cases. The evidence would not justify the rescission of the contract, much less the reformation of the deed in question. The circuit court was, therefore, clearly right in holding that the appellant had failed to sustain the allegations of his bill, and in dismissing the same. For these reasons we are of opinion to affirm the decree of the court below.

DECREE AFFIRMED.