ORPHA J. GIBBS v. BILLY PRICE, ET AL.

October 10, 1966.

Record No. 6297.

Present, Spratley, Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*W. Clyde Dennis* for the appellant.

*George C. Sutherland* for the appellees.

GORDON, J., delivered the opinion of the court.

We are called upon to decide whether the evidence supports the trial court's reformation of a deed.

Orpha J. Gibbs brought this suit for a declaratory judgment establishing her title to a house and lot and for an injunction restraining Billy Price from trespassing on the property. This lot was part of the land conveyed to her and Ethel Justus by Harold E. and John S. Smith, under deed dated October 20, 1952 (the "1952 deed"), following an auction sale.[1]

In his responsive pleadings Billy Price disputed Orpha J. Gibbs's ownership of the house and lot, and he asserted his right to occupy the property. He alleged that the parties to the 1952 deed did not intend that the house and lot be conveyed; that the lot was included in the land conveyed by the 1952 deed because of a mistake by the scrivener. Billy Price based his claim of right to occupy the house and lot upon a subsequent deed, dated June 25, 1954, from Harold E. and John S. Smith, purporting to convey a life estate to him.

John S. Smith and his wife and Harold E. Smith's widow and heirs intervened in the suit as parties defendant and filed a cross-bill. In the cross-bill they repeated in substance Billy Price's allegations about the mistake in the 1952 deed and claimed fee simple title to the disputed house and lot, subject to Billy Price's life estate. They asked the court to reform the 1952 deed so as to exclude this house and lot from the conveyance made under that deed.

Orpha J. Gibbs filed no pleading in response to the cross-bill. For that reason the trial court recited in its final decree that the cross-bill was taken for confessed. This was error in view of our Rule 2:13. The error was harmless, however, because the court considered the evidence brought forth in the case and based its adjudication upon the evidence.

In its decree the trial court held that the disputed house and lot were conveyed under the 1952 deed "by the mutual mistake of the parties and mistake of the scrivener who wrote said deed". The decree reformed the 1952 deed as prayed in the cross-bill. Orpha J. Gibbs appeals from that decree.

Well established equitable principles govern this case. Equity has undoubted jurisdiction to reform an instrument if it does not express the intent of the parties. Equity should give effect to the true

(1) Ethel Justus conveyed her interest in the property to Orpha J. Gibbs by deed dated February 27, 1960.

intent of the parties, despite a contrary intent reflected by a writing the parties mistakenly believed to monument their bargain. But equity should not act lightly. A signatory party who asks reformation asks impeachment of an instrument he has approved by his signature. To support reformation on the ground of mutual mistake, the proof "must be clear and satisfactory, leaving but little, if any, doubt of the mistake". *French* v. *Chapman*, 88 Va. 317, 322, 13 S.E. 479, 481 (1891); see *Larchmont Properties* v. *Cooperman*, 195 Va. 784, 80 S.E.2d 733 (1954).

The question, then, is whether the evidence furnishes the necessary proof of mutual mistake to support reformation of the 1952 deed.[2]

The evidence centers on an auction sale held October 18, 1952. This is so because the 1952 deed was delivered by Harold E. and John S. Smith to consummate the sale made at that auction. We cannot uphold reformation of the deed unless the evidence clearly shows they conveyed more property under the 1952 deed than was bargained for at the auction sale. So we will first set forth the evidence concerning what property was offered and what property was excluded at the auction sale.

Harold E. and John S. Smith owned a parcel of land on Lester's Fork in Buchanan County, which was separated into two tracts by a fence between the larger and smaller tracts. The evidence does not show the acreage of these tracts. The Starlight Theatre and a house, which is the subject of this controversy, were located on the larger tract. Victoria Stevens (a relative of Harold E. and John S. Smith, who later married Billy Price) occupied that house. A six-room house was located on the smaller tract.

Harold E. and John S. Smith decided to sell their land at auction and fixed October 18, 1952 as the date. Handbills were distributed before the sale, but none was available at the trial of this case. Only one exhibit, a clipping from the October 12, 1952 issue of the Bluefield Daily Telegraph, purported to describe the property to be offered for sale at the auction. It described the property as "The Starlight Theatre . . . Property on ¾ acre of land" and a "6 Room House on large lot adjoining Theatre".

The auction was held outside the Starlight Theatre, in sight of the house occupied by Victoria Stevens and the six-room house. The

---

(2) The evidence was taken by depositions, so the trial judge's findings will not be given the weight usually given to findings based on testimony heard by a judge in open court. *Brewer* v. *Brewer*, 199 Va. 753, 102 S.E.2d 303 (1958).

auctioneer did not testify in this case, and the witnesses were not certain who he was. He offered the larger tract and the smaller tract separately, but the evidence does not disclose whether he described the boundaries of the tracts.

The smaller tract with six-room house was not sold at the auction because the owners thought the highest bid inadequate. (Witnesses in this case referred to this tract as the Kenneth Smith property, apparently because he lived in that house at the time of the auction sale.) J. R. Gibbs and Raymond Justus, husbands of the grantees under the 1952 deed, made the highest bid for the other property offered at the sale, and the property was knocked down to them for $22,600.

Billy Price and the other appellees contend that the property knocked down to the buyers did not include the house and lot occupied by Victoria Stevens because the auctioneer expressly excluded this house and lot from the property offered for sale.

John S. Smith and his wife testified that the auctioneer announced the Victoria Stevens house and lot were not part of the property offered for sale. No other witness testified that he or she heard such an announcement.[3] John S. Smith testified, also, "at one time Harold picked up a stake, stick of wood, and come up the hill there and drove the stake down, and . . . the auctioneer pointed to the stake that Harold had just drove up". John S. Smith's wife and two other witnesses testified about stakes being driven in the ground, but they were as indefinite about the location of those stakes as John S. Smith was indefinite about the location of the stake he referred to.[4]

J. R. Gibbs, who bought the property for his wife, Orpha, said the auctioneer made no announcement that the Victoria Stevens house

(3) Harold E. Smith's widow said "when the Auctioneer got up to start the bid, he hold them the two places that were not to be sold, which was where Kenneth and his wife lived on the lower side and where Mrs. Stevens lived on the upper side". She impeached her own testimony, however, by admitting she did not hear anything the auctioneer said because she was inside the theatre.

Ethel Justus (one of the grantees under the 1952 deed) testified that she did not think she was acquiring title to the house where Victoria Stevens lived. But she admitted she did not hear any exception made by the auctioneer; she was sitting in an automobile during the sale. Moreover, when Ethel Justus subsequently conveyed her interest to Orpha J. Gibbs (under the deed mentioned in footnote (1)), Ethel generally warranted that she owned a one-half interest in the same property conveyed under the 1952 deed. In that deed she made no exception of the Victoria Stevens house and lot.

(4) John S. Smith's wife said only that Harold "took the stakes and drove them up for the piece of land that was excepted". Harold E. Smith's widow said that on the day of the auction Harold "went up and drove some stakes where the line was

and lot were excluded from the property offered for sale. Four disinterested witnesses who attended the auction corroborated his testimony. None of those four witnesses remembered any announcement made by the auctioneer about the Victoria Stevens house and lot. Two of them did remember the auctioneer's announcement that the Kenneth Smith property was excluded.

J. R. Gibbs testified that after the bidding was over, John S. Smith said he wished to exclude the Victoria Stevens house and lot from the property that had just been knocked down. Gibbs said he replied "John, if you expect that I will stop the sale, I won't agree to that, I will take care of old Aunt Victoria as long as she lives, she is my friend, and will never be harmed as long as I live". John S. Smith denied this conversation.

The parties closed the sale on October 23, 1952, by the execution and delivery of the 1952 deed against payment of the purchase price. The witnesses in this case agreed that a lawyer prepared the deed, but none could identify him. Orpha J. Gibbs testified that Harold E. Smith gave the lawyer a deed dated December 8, 1947, "so the lawyer could get the description from that", and Harold "described where the lower line would be . . ." Apparently the deed dated December 8, 1947 described the entire parcel owned by Harold E. and John S. Smith; apparently the "lower line" described by Harold was the fence line separating the Kenneth Smith property.

The 1952 deed conveyed one tract described by metes and bounds "containing one acre, more or less", expressly excepting and reserving the lot conveyed to Kenneth Smith and his wife by deed dated the same day. (It is not clear whether the 1952 deed conveyed one acre of land or conveyed one acre, less the acreage of the Kenneth Smith property.) The lot containing the house occupied by Victoria Stevens was wholly within the boundaries of the described tract. The deed made no exception of or reference to that house.

The evidence shows that all the parties to the deed were present at the closing: the grantors, Harold E. and John S. Smith, their wives, and the grantees, Orpha J. Gibbs and Ethel Justus. J. R. Gibbs said he was not present; the record does not disclose whether Ethel Justus's husband was present. Orpha J. Gibbs testified that the deed was read to all parties before it was signed, and her testimony was

supposed to come, which was back of the garage". The evidence does not show the location of the garage. Ethel Justus remembered "they were staking something off to a fodder shock" but, when asked where the fodder shock was, she replied "Don't ask me, I did not look."

corroborated by an adverse party, Harold E. Smith's widow. John S. Smith's wife denied that the deed was read, and Ethel Justus said only that she did not read it. The other persons who testified in this case did not say whether the deed was read.

Harold E. Smith's widow was asked if she could explain why the grantors did not convey the disputed house and lot to Victoria Stevens on the day the 1952 deed was delivered, since they conveyed the Kenneth Smith property to Kenneth on the same day. She replied "Yes, I can, we were still trying to get Victoria to go with us [to live in another part of the State]—we didn't want to leave her, but she didn't want to go . . ."

Victoria Stevens apparently continued to live in the same house until her marriage to Billy Price in 1953. After their marriage, they lived for an undisclosed period of time in another community. Victoria then moved back to the house with Billy Price, and he made improvements to the property.[5] At their request Harold E. and John S. Smith executed a deed dated June 25, 1954 (referred to in the third paragraph of this opinion) purporting to convey the house and lot to Victoria and Billy Price, for their joint lives and for the life of the survivor. Neither Victoria nor Billy Price paid any consideration for this deed. They were living in the house when Victoria died in 1961 or 1962, and Billy Price was living there when Orpha J. Gibbs instituted this suit against him in 1963.

The deed purporting to convey life estates to Victoria and Billy Price contained a metes and bounds description of the disputed lot, and the same description was incorporated into the trial court's decree reforming the 1952 deed. The evidence does not disclose how the boundaries of the lot were determined. According to the evidence the lot was not separated from the other land by a fence at the time of the auction sale, and the evidence does not indicate there was any other boundary-marker except the stake or stakes allegedly placed during the auction sale. No witness said that the boundaries of the lot as described in the 1954 deed and in the decree corresponded to the boundaries indicated by those stakes.

What does the evidence show was bargained for at the auction sale? No disinterested witness heard the auctioneer announce that the disputed house and lot were excluded from the property offered for sale. The interested witnesses contradicted one another. So we are left with doubt about what happened at the auction sale.

(5) Orpha J. Gibbs knew Billy Price was making improvements, but she testified she told him before this suit was brought that he was improving her property.

Then Harold E. Smith, one of the grantors, instructed an attorney to prepare the 1952 deed. He gave the attorney a property description, which included the disputed house and lot, and told him to exclude the Kenneth Smith property. The grantors delivered and the grantees accepted the deed prepared by the attorney, thereby agreeing that it carried out the bargain made at the sale. The parties' subsequent actions do not clearly indicate that the deed failed to carry out their intention when it was delivered.

We cannot say the evidence is "clear and satisfactory leaving but little, if any, doubt" that the deed conveyed the disputed house and lot because of mutual mistake by the parties. See *French* v. *Chapman, supra.*

Our order will direct the trial court to declare that Orpha J. Gibbs has title to the disputed lot and the improvements thereon and to enjoin Billy Price from trespassing on the lot, as prayed in the bill of complaint, and to dismiss the cross-bill.

*Reversed and remanded.*