COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Kelsey and McClanahan
Argued at Alexandria, Virginia


JOSEPH DANIEL BRANNON
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1722-06-4                    JUDGE JEAN HARRISON CLEMENTS
                                                          OCTOBER 9, 2007
JANICE A. BRANNON


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                               Marcus D. Williams, Judge

           James R. Becker (Law Offices of James R. Becker, on brief), for
           appellant.

           Keenan R. Goldsby (Richard C. Shadyac, Jr.; Sonya Powell;
           Feldesman Tucker Leifer Fidell LLP, on brief), for appellee.


       Joseph Daniel Brannon (husband) appeals a decision of the trial court dismissing

husband's Rule to Show Cause filed against Janice A. Brannon (wife), denying husband's

tripartite Motions Concerning Property Settlement Agreement, and awarding attorney's fees and

costs to wife.  On appeal, husband contends the trial court erred in 1) refusing to reform the

"retirement assets" clause of the Property Settlement Agreement (final PSA or PSA) where there

existed a mutual mistake of fact as to whether the distribution of wife's American Physical

Therapy Association (APTA) retirement asset was controlled by the final PSA; (2) not

examining the overall equity of the distribution of marital assets given the trial court's

interpretation of the final PSA; (3) awarding attorney's fees to wife while failing to credit

husband with attorney's fees for instances when he substantially prevailed; and (4) awarding

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

attorney's fees to wife under the authority of the final PSA.[1]  Wife also requests an award of

attorney's fees and costs in connection with this appeal.  Finding no error, we affirm the trial

court's decision, and remand this case to the trial court for a determination and award of

attorney's fees to wife associated with this appeal.

## I.  BACKGROUND

"We examine the record in the light most favorable to the prevailing part[y] and

determine whether substantial credible evidence supports the chancellor's decision."  Jennings v.

Jennings, 12 Va. App. 1187, 1189, 409 S.E.2d 8, 10 (1991).  So viewed, on December 11, 2003,

husband and wife executed a PSA in anticipation of divorce.  The final PSA provided in

pertinent part as follows:

> 5.  ENFORCEMENT
>
> In the event that either party should take legal action
> against the other by reason of the other's failure to abide by this
> Agreement, the party who is found to be substantially in violation
> of this Agreement shall pay to the party who substantially prevails
> in said action, the prevailing party's reasonable attorney's fees,
> investigators costs, court costs and any other costs reasonably
> incurred in the enforcement of this Agreement
>
> Any such costs incurred by a party who substantially
> prevails in the defense of any action for enforcement of any of the
> agreements, covenants or provisions of this Agreement shall be
> borne by the party seeking to enforce compliance.
>
> *     *     *     *     *     *     *
>
> 33.  RETIREMENT ASSETS:
>
> a.  Provided that the parties have made full financial
> disclosure to one another, each of the parties shall own, and have
> and enjoy independently of any claim or right of the other party all
> IRA accounts, 401(k) accounts, annuities, pensions and any other
> form of deferred compensation or similar accounts which are now

---

[1] Wife also raises the question of whether the trial court had jurisdiction to consider husband's motions filed more than twenty-one days after entry of the divorce decree.  See Rule 1:1.  We assume, without deciding, that the issues raised in this appeal were properly before the trial court.

owned or held in the name of, or which hereafter belong or go to either, with the full power of the designated owner to dispose of the same as fully and effectively in all respects and for all purposes as if he or she had never been married to the other EXCEPT as set forth hereinbelow.

b. The parties agree that Janice shall transfer to an IRA of Danny's choosing an amount which equalizes the marital share of the wife's 401(k) and IRAs and the marital share of the husband's TSP within ninety days of the date of entry of the Final Decree of Divorce. The accounts shall be evaluated as of the date of the execution of this Agreement. Each party warrants that he/she has not withdrawn any funds from these accounts since April 21, 2001.

The following sentence, immediately before the last sentence of subsection 33b, was crossed out and initialed by both parties: "The approximate rollover amount as of December 2003 is $35,462 as per Attachment #1." In addition, the date "April 21, 2001" was inserted at the end of the last sentence in subsection 33b and the words "the separation" were crossed out. The PSA was ratified, affirmed, and incorporated, but not merged into the final divorce decree entered by the trial court on December 30, 2003. Attachment #1 was not a part of the final PSA.

On August 11, 2004, husband filed a Petition for Rule to Show Cause and Motion to Reopen, addressing what husband characterized as wife's failure to comply with the final decree directing wife to remit to husband an amount intended to equalize the marital shares of the parties' retirement accounts. By letter dated August 30, 2004, wife's new counsel notified husband that it was her position that the APTA employee benefits plan and her Lincoln Financial Group Annuity 403(b) Plan were not subject to division because each asset was neither a 401(k) nor an IRA for purposes of subsection 33b of the final PSA.

On January 11, 2006, husband filed a document entitled "Motions Concerning Property Settlement Agreement," alleging, among other things, that a mutual mistake of fact had occurred between the parties with respect to the final PSA's treatment of retirement accounts. He asserted on motion that the parties had unintentionally omitted a provision for the division of wife's

- 3 -

retirement accounts, namely her APTA Employee Benefits Plan and her Lincoln Financial Group

Annuity 403(b) Plan, that the parties' intent had been for husband to receive half their value, that

the sentence scratched from subsection 33b of the final PSA was redacted only because he did

not agree to the exact dollar amount necessary for equalization, and that the parties intended to

remove only the contested dollar amount, not to omit the retirement accounts from the equalizing

payment calculation. Husband's motion asked the trial court to reform the PSA in accordance

with the parties' actual intent that wife pay him half of the retirement account balances.[2]

On April 5, 2006, the trial court held a hearing on husband's rule to show cause and his

motions concerning the PSA. An unsigned, December 10, 2003 draft of the PSA was entered

into evidence. It contained a version of subsection 33b essentially as it existed in the final PSA

prior to the initialed changes that resulted from the negotiations of December 11.[3] The

December 10 draft also contained an Attachment #1 providing dollar values for various

retirement accounts of husband and wife. Attachment #1 listed the APTA as a "Def. Contr."

account with a dollar value of $87,781, and provided the "Amount to Equalize" was $35,462

with the words "Wife Owes Husb." written next to that amount. Husband claimed that during

negotiations with wife and her counsel in November 2003, wife offered to transfer $31,399 to a

rollover IRA to equalize their retirement assets, as evinced by wife's counsel's November 20,

2003 letter to husband's counsel. Husband acknowledged that Attachment #1 listed wife's

ATPA as a "defined contribution" plan. He stated that a fax received from wife's counsel on

December 10, 2003 indicated that amount to equalize was $35,462 and contained the words

"wife owes husband." However, husband denied that he agreed to accept $35,462 as the

---

[2] At trial, husband dropped his claim to the Lincoln Financial Group Annuity 403(b) Plan.

[3] An amount of $31,400 had been crossed out and $35,462 was typed in its place.

equalizing payment. He contended that on the next day, December 11, 2003, during lengthy negotiations, wife was "trying to make payments to equalize all the retirement assets" and that she made no exception of her APTA plan. Husband claimed wife's attorney agreed to strike the sentence in subsection 33b of the final PSA containing the "roll-over amount" because husband had valid reasons for believing the equalizing payment amount was inadequate. Husband testified that wife's attorney told him that if the sentence were omitted, the parties could agree to terms and wife would subsequently make the transfer. Based upon wife's attorney's statements, husband claimed he intended that their various retirement accounts, with the exception of wife's 403(b) account, were to be equalized. Husband claimed that during the December 11, 2003 negotiations, he was not made aware that wife's "APTA-defined contribution plan was off the table or that it was not going to be divided." Husband admitted that when he signed the final PSA, Attachment #1 was not attached, but claimed that document was on the table with other documents.

On cross-examination, husband admitted that counsel represented him on December 11, 2003, during the negotiations and subsequent signing of the final PSA. He testified that he did not read the entire final PSA with his counsel because his counsel refused to review parts of it with him. Husband also admitted that the final copy of the final PSA he received that night did not contain Attachment #1 and that he stated in his deposition that there was never any Attachment #1 to the final PSA. He claimed that Attachment #1 did not fully reflect his intent with respect to the retirement accounts, and prepared a document admitted into evidence as his Exhibit 5, titled "How Attachment #1 Should Look, According to Final Decree." That document indicated that the "APTA Defined Contribution/Vanguard Group" account was valued as of June 30, 2002 at $82,721.79 and that the amount to equalize was $47,685.13. Husband did not know if Attachment #1 reflected wife's intent with respect to the retirement accounts. Husband

- 5 -

admitted that at the December 11, 2003 negotiation meeting, he and his counsel were present when the second to the last sentence in subsection 33b of the PSA was crossed-out and that he initialed the change.

On redirect examination, husband stated that Attachment #1 reflected his intent that the retirement accounts were to be equalized, but did not reflect the correct dollar amount that he was to receive. He claimed his Exhibit 5 reflected his intent as to the amount he should receive, less the Lincoln Financial 403(b) account. He denied that there was ever any disclosure to him on December 11, 2003, before he signed the final PSA, that he would not be receiving one-half of wife's APTA retirement account.

Wife testified the sentence was crossed out in subsection 33b as a result of negotiations on December 11, 2003. Wife denied ever agreeing that Attachment #1 would be attached to the PSA that she signed. Wife denied ever intending when she signed the final PSA that her marital retirement accounts would be divided equally. Wife agreed that on the night of December 11, 2003 "everything was subject to negotiation," and she denied going into the negotiation with any specific intent regarding the division of assets. She testified that the terms of subsection 33b of the final PSA comported fully with her intent at the time "we signed and initialed it."

The trial court, noting that wife made "clear that her intent was reflected in the [final] PSA, and . . . that she was not committed to any prior proposals for settlement," found that "there was a work in progress between December 10 and December 11," and concluded that husband had not proved by clear and convincing evidence that a mutual mistake of fact had occurred. Finding further that "the issues concerning the enforcement claim and the reformation claim were substantially the same, and in terms of attorney preparation they were identical," the trial court dismissed the rule to show cause, denied husband's motions, and awarded wife $17,169.59 in attorney's fees and costs. This appeal followed.

## II. MUTUAL MISTAKE OF FACT

"[P]roperty settlement agreements are contracts and [are] subject to the same rules of formation, validity and interpretation as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986) (citation omitted). Here, husband does not dispute the meaning or effect of the final PSA; rather, he asserts that the terms set forth therein do not reflect the agreement of the parties. He argues that the discrepancy between the intent of the parties and the terms of the final PSA is the result of a mutual mistake of fact; specifically, that wife shared husband's mistaken belief that the APTA retirement asset was an IRA or 401(k) plan. Husband argues that wife intended at the time she agreed to the final PSA "to use her APTA retirement asset as the vehicle by which to evaluate the equalization payment she promised to make in paragraph 33a of the [final] PSA within ninety days of the final decree." He claims that Attachment #1 of the December 10 draft of the PSA evinces her recognition that some portion of her APTA was to be received by him under the final PSA, even if the parties could not agree on the proper amount. Husband states the mutual mistake of fact became apparent when wife's new counsel, as a defense to payment, alerted him that the APTA was not an IRA or 401(k) plan, and was therefore not subject to "equalization" under subsection 33b of the final PSA. As a consequence of the parties' mutual mistake, husband contends, the trial court should have reformed the final PSA to reflect terms in accordance with the parties' actual agreement. He concludes that the trial court erred when it denied his motion insofar as it sought reformation of the PSA to include the value of wife's APTA in the calculation of the equalization payment that was to be made by wife to husband under final PSA subsection 33b.[4] We disagree.

---

[4] Husband also includes an argument that the trial court should have reformed the PSA on grounds of equitable estoppel. He did not, however, include that issue in his Questions Presented, or cite to where he preserved an equitable estoppel argument for appellate review. Accordingly, we will not consider that issue on appeal.

- 7 -

"The judgment of a trial court sitting in equity, when based upon an *ore tenus* hearing, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Box v. Talley, 1 Va. App. 289, 293, 338 S.E.2d 349, 351 (1986). The equitable remedy of reformation "provides relief against a mistake of fact in a written instrument" where clear and convincing evidence demonstrates that "both parties sign an instrument mistakenly believing it reflects their antecedent bargain." Gibbs v. Price, 207 Va. 448, 449-50, 150 S.E.2d 551, 552 (1966); see Boone v. Scott, 166 Va. 644, 653, 187 S.E. 432, 436 (1936) (holding that where a mutual mistake of material fact "has been proved by clear, cogent and satisfactory evidence, equity should, and will reform the instrument to make it conform to the real intent of the parties at the time it was executed"). "In determining whether a mutual mistake of fact existed at the time of the agreement, [the inquiry is] whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed." Collins v. Dept. of Alcoholic Beverage Control, 21 Va. App. 671, 681, 467 S.E.2d 279, 283, aff'd on reh'g en banc, 22 Va. App. 625, 472 S.E.2d 287 (1996).

The trial court heard the parties' testimony regarding the drafting, negotiation, and execution of the PSA. Between December 10 and December 11, 2003, the parties vigorously negotiated and eventually ratified the version of the PSA that became final. Wife unequivocally testified that "everything was subject to negotiation" on the night of December 11, 2003 and that she had no other intent with respect to the marital retirement accounts than that expressed in the final PSA. Based on her testimony, the trial court found that husband failed to establish by clear and convincing evidence that the parties were mutually mistaken with respect to the final PSA's treatment of the APTA retirement asset. The record supports that determination, and we find no plain error inhering the trial court's conclusion that there was no antecedent bargain on which to

- 8 -

base reformation.  Accordingly, we affirm the trial court's decision dismissing husband's Rule to Show Cause and denying husband's Motions Concerning Property Settlement Agreement.

## III.  OVERALL EQUITY OF DISTRIBUTION

Rule 5A:20(e) provides that the opening brief of appellant shall contain "[t]he principles of law, the argument, and the authorities relating to each question presented."  Husband argues the trial court abused its discretion in not examining the overall equity of distribution of marital assets when it refused to reform the parties' final PSA, but does not cite to any case law or authority to support this argument.  Husband having failed to comply with Rule 5A:20(e), we will not consider this question.  See Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.").

## IV.  ATTORNEY'S FEE CLAUSE

Section 5 of the final PSA provides the trial court with authority to award attorney's fees to the party who successfully defends in an action for enforcement.  Because the motions before the trial court on April 5, 2006 sought reformation, husband argues that wife did not satisfy the condition precedent for an award.  He also contends the final PSA required a finding that the losing party was "substantially in violation of this Agreement," a finding husband denies the trial court made.  Finally, he asserts that section 5 of the final PSA, which omitted the words "attorney's fees" used in the preceding paragraph but included only the word "costs," did not authorize an award of attorney's fees, but rather only allowed an award of "costs."  We disagree with each of these arguments.

Code § 20-109(C) provides as follows:

> In suits for divorce, annulment and separate maintenance, and in proceedings arising under subdivision A 3 or subsection L of § 16.1-241, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry

of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract. If such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.

Husband took legal action against wife based on his assertion that she failed to comply with the final PSA when she did not make the equalizing payment he demanded. Wife substantially prevailed in her defense to husband's action for enforcement of what he claimed the parties intended the final PSA to provide, and the PSA stipulates that he should therefore bear her associated costs. We also find no error in the trial court's factual determination as to what will constitute "costs" under section 5 and, therefore, conclude that the trial court did not abuse its discretion here in awarding wife attorney's fees.

## V. ATTORNEY'S FEES

Husband argues the trial court abused its discretion in the amount of attorney's fees awarded to wife and in its failure to credit him with attorney's fees on matters on which he substantially prevailed. Again, husband cites no case law or authority to support his position. Accordingly, we will not consider this question.

Furthermore, because wife has prevailed on appeal, under the terms of the PSA and decree, husband is obligated to pay her attorney's fees incurred on appeal. Accordingly, we remand the case to the trial court for a determination and award of attorney's fees associated with this appeal. See Sanford v. Sanford, 19 Va. App. 241, 250, 450 S.E.2d 185, 190 (1994).

Affirmed and remanded.