# Richmond

Larchmont Properties, Incorporated, Allan Homes, Incorporated, Irving Berman and George H. Hurwitz v. Maurice H. Cooperman and Katherine I. Cooperman, His Wife.

Larchmont Properties, Incorporated, Allan Homes, Incorporated, Irving Berman and George H. Hurwitz v. Russell Forsyth Craig and Georgia Lee Craig, His Wife.

Larchmont Properties, Incorporated, Allan Homes, Incorporated, Irving Berman and George H. Hurwitz v. Weldon Randolph Bishop and Betty Rountree Bishop, His Wife.

March 15, 1954.

Record Nos. 4145, 4146, 4147.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Nathan L. Silberberg* and *James H. Simmonds*, for the appellants.

*Charles Pickett*, for the appellees.

MILLER, J., delivered the opinion of the court.

In these three companion suits in equity the evidence taken and heard in one cause was, by agreement of counsel, considered and acted upon as the evidence in the other two.

Maurice H. Cooperman and wife, Russell Forsyth Craig and wife, and Weldon Randolph Bishop and wife, appellees in this court, filed their respective bills of complaint in the circuit court against Larchmont Properties, Incorporated, Allan Homes, Incorporated, Irving Berman and George H. Hurwitz. Each named complainant and wife sought reformation of a contract and deed by which a lot of land with improvements thereon had been sold and granted to them by Larchmont Properties, Incorporated. In each instance appellees asserted that a lot of lesser size and value than the one they had agreed to buy had been substituted for the larger lot that the corporation was obliged to grant to them.

In their bills, complainants alleged that the vendor had extensively advertised lots for sale in "Section 3, Poplar Heights," Fairfax county, Virginia, and that they had agreed with the corporation to purchase lots bearing specified numbers as disclosed on the plat of the subdivision exhibited to them and as designated by boundary markers on the land, the markers having been pointed out to them by agents of appellant, Larchmont Properties, Incorporated, when they viewed the property. Appellees, Cooperman and wife, charged that they had signed a written contract to purchase for $14,250 a lot and residence described in the contract as "Lot 34, Section 3, Poplar Heights, Fairfax County, Virginia as located on a plat of said Subdivision on file among the land records of Fairfax County * * *." After they had made partial payment for lot 34, Larchmont Properties, Incorporated, wrongfully inserted the letter "A" after the numeral 34 when it signed the contract, thus changing the lot number to 34A. This lot 34A covered a part of the area included within the lines of lot 34, but as it appeared on a new plat and survey of the property, which had not been exhibited to complainants and of which they were unaware, was of materially lesser depth. It is further alleged that when the deed was executed, the smaller lot was granted to complainants, and they did not learn of the substitution until some months later when they observed surveyors and workmen moving and replacing the boundary markers at the rear of their lot.

The allegations made by complainants Russell Forsyth Craig and wife, and William Randolph Bishop and wife in their bills of complaint are substantially similar to those made by Cooperman and wife. They charged that the lots with improvements thereon that they negotiated for and purchased from Larchmont Properties, Incorporated, were lots Nos. 37 and 38 of Section 3, Poplar Heights, as they appeared on the original subdivision and plat exhibited to them and that the markers and boundary lines of lots 37 and 38 were pointed out to them by agents of appellant,

Larchmont Properties, Incorporated, when they viewed the property. However, at the time these appellees signed the contracts, they noticed the letter "A" immediately following the numerals 37 and 38, and in their bills it is charged· that they inquired as to the meaning of the added letter, and were told by vendor's agent that it had no significance. They allege that they were thus fraudulently induced and led to believe that· there had been no change in the plat and subdivision or in the dimensions of the lots, and that they honestly thought, as they had been told, that they were actually purchasing lots 37 and 38 as disclosed on the plat exhibited to them and included within the physical markers on the land. They, like Cooperman and wife, assert that they did not become aware of the fact that lesser sized lots, as disclosed by a re-subdivision and new plat of the land had been substituted in their contracts and deeds in place of the lots that they had been shown and agreed to purchase until after they had entered into possession and noticed surveyors and workmen making a resurvey of the lines of the lots and relocating the physical markers designating the rear boundary lines.

Before institution of these suits, the area cut off from the rear of lots 34, 37 and 38 by replatting and reduction of their depth was, along with other land, conveyed by Larchmont Properties, Incorporated, to Allan Homes, Incorporated. But in each bill of complaint it is alleged that the principal stockholders in both corporations are Irving Berman and George M. Hurwitz and their wives, and that "each corporation is the *alter ego* of the other and of" the individual appellants, and that all appellants were fully aware of and participated in the transactions of the others.

Each and all of the bills finally charged that complainants relied upon the material but false representations made by Larchmont Properties, Inc., and were thus misled and defrauded, and they prayed for reformation of the contracts and deeds, conveyance of the lots according to their original dimensions, and for general relief.

Appellants demurred to the bills, but the demurrers were overruled, and no assignments of error have been taken to that ruling of the court.

Answers filed by appellants denied the allegations of fraud; alleged that complainants had been deeded the lots that they purchased; asserted in effect that complainants were relying upon oral agreements to purchase lots 34, 37 and 38, which were unenforceable under the statute of frauds; and that they were attempting to vary written contracts by parol evidence; and that complainants were not entitled to have the relief prayed for, *i.e.*, reformation of the deeds on the allegations set out in the respective bills.

The testimony was voluminous, and most of it was heard *ore tenus* by the court. Upon conclusion of the evidence and after hearing argument of counsel, the court entered decrees that reformed the deeds and adjudged that the complainants were the owners respectively of lots 34, 37 and 38 as disclosed on the original plat of the subdivision.

The material parts of the decree entered in the Cooperman case, which is similar in legal import to those entered in the other two cases, follow:

"This cause coming on to be heard * * * upon the bill of complaint, the answer of the defendants, the testimony of witnesses taken *ore tenus*, the depositions of witnesses taken pursuant to notice and filed, the exhibits filed with the bill of complaint, the exhibits offered in evidence by the respective parties at the hearing and was argued by counsel, and the Court having taken time to consider * * *, doth adjudge, order and decree as follows:

"1. That the deed from Larchmont Properties, Inc. to Maurice H. Cooperman and Katherine I. Cooperman, his wife, dated June 1st, 1951, * * * be and the same hereby is reformed so that the description of the land thereby conveyed shall read as follows: Book 36 page 317

"All of Lot 34, Section 3, Poplar Heights as the same is dedicated, platted and recorded in Deed Book 801, page 443 of the land records of Fairfax County, Virginia. * * *""

None of the testimony was presented to the trial court for certification in any of the cases within the time allowed by law, and thus it has not been made a part of the record and may not be considered by us upon these appeals.

Yet numerous exhibits that were offered in evidence when the testimony was being heard and that were then marked for identification and initialed by the judge, appear among the papers in the causes. Appellants rely upon these exhibits to show that no fraud was practiced upon appellees and that they were not misled, and insist that the exhibits are a part of the records to be considered by this court under Rule 5:1 § 3(d), which follows:

"Each exhibit, when offered in evidence in court, whether admitted or rejected, shall be marked for identification, and shall be initialed by the judge. It becomes part of the record when so initialed."

With appellants' contention we cannot agree. When exhibits are tendered in evidence, received and initialed by the judge, we may not consider them when the other evidence and testimony has not been made a part of the record.

"The chancellor having considered the evidence heard *ore tenus* on Nov. 15, 1946, in determining what sums should be refunded by appellant to the receivership account, and that evidence not being a part of the record to be considered by this court, the decision of the chancellor which involved questions of fact as well as questions of law is presumed to be correct and is conclusive upon this court." *Steingold* v. *Seaton, etc.,* 187 Va. 923, 931, 48 S. E. (2d) 225. *Potts* v. *Flippen, Adm'r., et al.,* 171 Va. 52, 197 S. E. 422.

We are not permitted to give evidential value to exhibits which constitute only a part of the evidence and thus determine a chancery cause on appeal upon its merits when only a part of the evidence is before us. The oral testimony not made a part of the record may have weakened or totally destroyed the evidential value of any or all of the exhibits now relied upon by appellants. If a litigant, with-

out consent of other interested parties, were allowed to present his cause in this court upon only a part of the evidence, the inevitable result would be that the merits of the case would be determined on appeal upon evidence materially different from that considered by the trial court. That cannot be permitted.

Nor do we find any merit in the contentions that to grant reformation of the contracts and deeds would be allowing appellees to maintain their actions in violation of the statute of frauds and vary written contracts with parol proof. The pertinent parts of section 11-2, Code of 1950, commonly called the statute of frauds, follow:

"No action shall be brought in any of the following cases:

\*      \*      \*      \*      \*      \*      \*

"(6) Upon any contract for the sale of real estate, \* \* \*; Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent; \* \* \*"

In each bill there are charges that another lot was fraudulently substituted in place of the lot actually purchased and paid for. In short there are allegations in each bill of honest mistake on the part of appellees which was brought about and caused by fraud on the part of the vendor in the procurement and execution of the writings.

Under the allegations of the bills it does not appear that oral contracts for sale of real estate are sought to be enforced or that extrinsic evidence was to be relied upon to vary valid written contracts. The parol proof contemplated in the bills was to identify the subject matter, i.e., the lots and properties actually purchased by appellees and sold to them by Larchmont Properties, Inc., and thus have reformation of the written instruments so as to make effectual the true and actual contracts.

"\* \* \* Equity has jurisdiction to reform written instruments in but two well-defined cases: 1. Where there is a

mutual mistake,—that is, where there has been a meeting of minds,—an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and 2. Where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement of transaction entered into according to the intention of the parties." 4 *Pomeroy's* Equity Jurisprudence (5th ed.), sec. 1376, p. 1000.

"The contest here is between the parties to the contract exclusively—the one seeking to reform the deed of April 27th, 1872, by parol proof of mistake, and the other resisting it upon the ground that there was no mistake. It will not be denied that it is entirely competent for a court of equity to correct a mistake in a deed or other writing upon parol evidence. Hence in *Mauzy* v. *Sellars*, 26 Gratt. 641, Judge Staples, quoting with approbation the language of Chancellor Kent in *Gillespie* v. *Moore* [*Moon*], 2 John. Ch. R. 585, 596, says: 'I have looked into most, if not all, of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against *any deed* or *contract* in writing, founded on mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively by bill or as a defence.'" *French* v. *Chapman*, 88 Va. 317, 321, 13 S. E. 479.

Though it did appear from the allegations of the bills that appellees intended to rely upon parol evidence to prove that the contracts and deeds as written did not embody the true agreements of the parties and that lots smaller than those actually purchased had by mistake of appellees and fraud of the vendors been substituted for the larger, yet that would not render the bills demurrable, nor would the admission of extrinsic evidence to prove the mistake and fraud, and identify the true subject matter be violative of what is com-

monly called the parol evidence rule. Tompkins: The Chamberlayne Trial Evidence, secs. 850, 1113, pp. 811, 1125; 7 M. J., Evidence, secs. 162, 163, pp. 523-525; 13 M. J., Mistake and Accident, sec. 14, p. 147; *Hopkins* v. *LeCato*, 142 Va. 769, 128 S. E. 55; *Towner* v. *Lucas' Ex'or*, 13 Gratt. 705.

In deciding the rights of the parties upon each of these records, we may look only to the allegations of the bill and to the final decree, and if the relief granted in each case is justified by the bill of complaint, then the decree must be affirmed. Thus in the final analysis appellants may rely only upon their last legal contention, which is that reformation of the contracts and deeds as decreed by the court, was not warranted even though all the material allegations made against appellants were proved. Without the evidence before us, the allegations must be presumed to have been proved.

The bill charged that appellants fraudulently substituted lots of lesser size and value than those contracted for, and no offer was made by appellants to return the purchase money and release appellees from their obligations. But appellants finally insist that reformation of the contracts and deeds could be had solely upon allegations and proof of mutual mistake and that upon allegations of fraud, appellees were only entitled to have rescission of the contracts and deeds. This position is not sustained by the authorities.

It is true that rescission of written instruments may be had for fraud or mutual mistake of fact. Lile's Notes on Equity Jurisprudence, Ch. XVI, p. 115, and 8 Michie's Va.-W. Va. Digest, Rescission, Cancellation and Reformation, sec. 15, p. 640. Reformation of instruments of this character can also be granted for mutual mistake. *Holland, et al.* v. *Vaughan, et al.*, 120 Va. 324, 91 S. E. 122. Yet the right to have reformation is not limited solely to cases of mistake. It may be granted where there is mistake on the part of one party and misrepresentation and fraud perpetrated by the other party to the hurt and detriment of the former.

" * * * The authorities all agree that equity has jurisdiction to reform written instruments in two well defined classes of cases only, viz: (1) Where there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. * * * " *Shenandoah Valley R. R. Co.* v. *Dunlop and Wife,* 86 Va. 346, 351, 10 S. E. 239. *Donaldson & Wife* v. *Levine,* et al., 93 Va. 472, 25 S. E. 541; *Wilkinson* v. *Dorsey,* 112 Va. 859, 72 S. E. 676; *National Fruit Product Co.* v. *Parks, et al.,* 108 W. Va. 321, 150 S. E. 749; Lile's Notes, *supra,* p. 123; 16 M. J., Rescission, Cancellation and Reformation, sec. 30, p. 166; 4 Pomeroy's Equity Jurisprudence, (5th ed.) sec. 1376, p. 1001; 45 Am. Jur., Reformation of Instruments, secs. 57 and 62, pp. 619 and 621; 24 Am. Jur., Fraud and Deceit, sec. 192, p. 11; 76 C. J. S., Reformation of Instruments, secs. 29, 30.

The allegations of the bills clearly sustain the relief granted, and on the records as presented here, the final decrees must be affirmed.

*Affirmed.*