# RICHARD P. WARD

## v.

# LINDA L. WARD

Record No. 880074

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Gordon, Retired Justice

*James R. Tate (Andrew M. Vanderhoof; Tate & Bywater*, on brief), for appellant.
*Martin R. Mann* for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

Richard P. Ward and Linda L. Ward were divorced by final decree entered November 2, 1981. On July 1, 1982, Linda filed a bill of complaint for partition of the real property owned by the parties. On March 30, 1983, they entered into a property settlement agreement which, in addition to other matters, involved the disposition of two pieces of real property they owned, a townhouse

on Durer Court and the marital residence on Grassvalley Court, both located in Springfield, Fairfax County.

The agreement provided that the two pieces of property would be appraised, that the townhouse would be sold with the parties splitting the net proceeds of sale on "a fifty — fifty basis," and that Richard would purchase the marital residence and pay Linda 100% of the parties' net equity in that property.

On October 24, 1986, Richard filed a petition in which he sought reformation of the property settlement agreement. He alleged that, prior to the time the agreement was signed, the parties had agreed they would "equally divide the net equity in the [two] properties owned by them and their intention was that [Linda] should receive 100% of the proceeds of the sale of the townhouse . . . as a credit toward one-half of the net equity of the marital residence."

Richard alleged further that when he signed the property settlement agreement, he did not notice it contained an error which gave Linda 100% of the net equity in the marital residence. He did not learn of the error, Richard alleged, until September 18, 1985, when Linda made demand upon him for the 100% payment called for in the written agreement. By then, he claimed, he had already given her 100% of the proceeds received from the sale of the townhouse. He requested that the trial court reform the property settlement agreement "to eliminate the error and to reflect the actual agreement between the parties."

In her response, Linda denied that there was any error in the wording of the property settlement agreement, and she maintained that she was entitled to 100% of the net equity in the marital residence. She alleged that Richard "was represented by counsel through all stages of the negotiations which resulted in the signing of the Property Settlement Agreement, and that in fact the final Property Settlement Agreement was prepared by his counsel without his objection." She concluded by asserting that, because there was no mutual mistake in the transaction between the parties, Richard could prove his case only by showing fraud on her part, "and there has been no fraud pleaded in [Richard's] Petition."

By an agreed order, the matter was referred to a commissioner in chancery for hearing and recommendation on the relief prayed for in Richard's petition. The commissioner reported: "The Agreement [of March 30, 1983] is not ambiguous as to the division of the real estate between the parties. There was no al5egation of

fraud, nor evidence of fraud, that would permit the Court to consider parol evidence to vary the terms of the Agreement." Hence, the commissioner concluded, "the Agreement should stand as drafted and signed by the parties."[1]

Richard filed exceptions to the commissioner's report. He asserted that the writing of March 30, 1983, did not embody the understanding reached between the parties before the agreement was signed, that the agreement contained an error which neither party intended and of which he was unaware, and that "the attempt by one party to capitalize on an error unknown to the other party imputes fraudulent intent to one seeking to capitalize on the mistake."

The trial court heard argument on Richard's exceptions and overruled them. By final order entered October 19, 1987, the court held that Linda was entitled to 100% of the equity in the marital residence and that upon payment to her of the sum of $56,010.12,[2] plus interest, Richard would be entitled to receive a conveyance of the property by general warranty deed.

We granted Richard an appeal. He contends that the trial court erred in ruling that extrinsic evidence was inadmissible to vary the terms of the March 30, 1983 agreement and in refusing to reform the agreement to reflect the parties' actual intent.

Richard acknowledges that parol evidence is ordinarily inadmissible "once two parties have come to a meeting of the minds" and their agreement has been reduced to writing. He argues, however, that "parol evidence is admissible to show the intent of the parties when mistake is alleged."

Richard reviews a number of Virginia decisions involving the subject of mistake and draws from them the plain "implication . . . that if there is clear, convincing, and non-conflicting extrinsic evidence of the intent of the parties, such evidence must be used to determine the intent of a document when one of the parties alleges the words do not embody the intent." Had he been allowed to introduce extrinsic evidence, Richard opines, he would have

---

[1] Richard makes no serious contention on appeal that extrinsic evidence should have been admitted because the language of the March 30, 1983 agreement is ambiguous. Such a contention would be unavailing in any event because, as the commissioner in chancery found, the language of the agreement is not ambiguous.

[2] The $56,010.12 figure reflects a credit given Richard for his 50% share of the net proceeds of the sale of the townhouse, Linda having received the entire proceeds when the townhouse was sold.

been able to supply proof of the parties' actual intent sufficient to warrant reformation of the March 30, 1983 agreement.

The equitable remedy of reformation, however, provides relief against a mistake of fact in a written instrument in only two instances. The first is where the mistake is mutual, that is, where both parties sign an instrument mistakenly believing it reflects their antecedent bargain. *Gibbs* v. *Price*, 207 Va. 448, 449-50, 150 S.E.2d 551, 552 (1966). The second is where "there is mistake on the part of [only] one party," that is, the mistake is unilateral, but it is accompanied by "misrepresentation and fraud perpetrated by the other." *Larchmont Properties* v. *Cooperman*, 195 Va. 784, 792, 80 S.E.2d 733, 738 (1954).

The difficulty with Richard's position is that every one of the Virginia cases he cites involves a *mutual* mistake of fact. Richard says that *Boone* v. *Scott*, 166 Va. 644, 187 S.E. 432 (1936), is an "enlightening" example of where "extrinsic evidence was used to show the real intent of the parties and to demonstrate a clerical error on the face of the document." Yet, the very passage of the *Boone* opinion which Richard quotes on brief shows that the mistake involved was mutual[3] and that, were reformation of the document denied, "the grantee [would] obtain a larger and different estate than that which he intended to acquire, and the grantor [would] be forced to dispose of a right in an estate which she did not intend to sell." *Id.* at 653, 187 S.E. at 436.

Here, the mistake was not mutual. Linda did not mistakenly believe that the March 30, 1983 agreement reflected the parties' antecedent bargain. Called by Richard as an adverse witness before the commissioner in chancery, Linda testified that when she received in the mail the draft of the March 30, 1983 agreement, which had been prepared by Richard's counsel, she expected it to provide for a fifty-fifty division of the parties' equity in the marital residence. She also stated, however, without contradiction, that Richard's counsel had delayed preparing the agreement and that "after all the time of waiting for it," she had "changed [her] mind" about signing it until she saw "the new figure on it."

---

[3] In addition to the passage quoted by Richard, the opening sentence of the *Boone* opinion shows the case involves mutual mistake. That sentence reads: "The object of this suit is to correct an alleged *mutual* mistake in the description of a certain tract of land conveyed by deed, bearing date July 9, 1924, from Lucy Jackson Scott to Howard Boone." 166 Va. at 645, 187 S.E. at 432. (Emphasis added.)

Linda testified further, still without contradiction, that when she signed the agreement, she knew it provided she would receive 100% of the net equity in the marital residence; that signing the agreement was "what [she] wanted to do;" and that she would not have signed had the agreement not provided she would receive 100% of the net equity in the marital residence.

■ Clearly, therefore, the mistake involved here was unilateral, and Richard was not entitled to relief at the hands of the trial court unless the mistake was accompanied by fraud on Linda's part. As the commissioner in chancery found, however, "[t]here was no allegation of fraud, nor evidence of fraud, that would permit the Court to consider parol evidence to vary the terms of the Agreement."

The record supports the commissioner's finding. The only formal mention of fraud made by Richard in the trial court appears in the exceptions he filed to the commissioner's report. There, as noted previously, he stated that "the attempt by one party to capitalize on an error unknown to the other party imputes fraudulent intent to one seeking to capitalize on the mistake."

■ But an exception to a commissioner's report is not the proper place to make an initial charge of fraud. Richard should have made the charge in his amended petition for reformation.

■ Be that as it may, fraud, once properly alleged, must be proved by clear and convincing evidence. *City of Norfolk* v. *Bennett*, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965). Here, Richard's proof of "fraudulent intent" on Linda's part was woefully lacking. Indeed, the only evidence touching on the point consists of testimony from Linda, again uncontradicted, that although she was surprised when she received the draft of the March 30, 1983 agreement and realized it represented a substantial change in Richard's position, she thought he had agreed to the change because he "was getting rid of [her]."

■ Richard characterizes this testimony as "feeble and highly implausible." But the testimony was not incredible as a matter of law, and the commissioner was entitled to believe it and give it the weight he deemed proper.

■ Richard contends, however, that we need not even reach the question of fraud in order to grant him relief. He states that we can resolve this case in his favor by adopting the rule that "[a] mistake made by one party with the knowledge of the other, or

with such knowledge plus silence, is . . . equivalent to mutual mistake."[4]

Application of the rule to this case, however, would be contrary to the uncontradicted evidence that Linda thought Richard had agreed to the change in the March 30, 1983 agreement because he "was getting rid of [her]." Adoption of such a rule would also constitute a substantial change in Virginia law, a change we are unwilling to make.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*

---

[4] According to Richard's counsel, the purported rule is taken from a legal reference work.