**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LUMBERMENS MUTUAL CASUALTY
COMPANY,
Plaintiff-Appellant,

v.

MIDLAND NATIONAL LIFE INSURANCE
COMPANY; MANGELSDORF, LEWIS AND

DAVIDSON, INCORPORATED; ELENA
CASTELLON, a/k/a Elena Lozano,
Defendants-Appellees,

No. 94-2206

and

ESTATE OF EDDY CASTELLON,
Defendant.

LUMBERMENS MUTUAL CASUALTY
COMPANY,
Plaintiff,

v.

ESTATE OF EDDY CASTELLON,
Defendant-Appellant,

No. 94-2240

and

MIDLAND NATIONAL LIFE INSURANCE
COMPANY; MANGELSDORF, LEWIS AND
DAVIDSON, INCORPORATED; ELENA
CASTELLON, a/k/a Elena Lozano,
Defendants-Appelles.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-93-1417-A)

Argued: December 4, 1995

Decided: March 6, 1996

Before WILKINSON, Chief Judge, RUSSELL, Circuit Judge, and THORNBURG, United States District Judge for the Western District of North Carolina, sitting by designation.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Kevin Joseph O'Connell, O'CONNELL & O'CONNELL, Rockville, Maryland, for Appellants. Brian Charles Riopelle, MCGUIRE, WOODS, BATTLE & BOOTHE, Richmond, Virginia, for Appellee Midland National Life; Valerie Lisabeth Tetro, JOSEPH F. CUNNINGHAM & ASSOCIATES, Washington, D.C., for Appellee Mangelsdorf, Lewis & Davidson; Michael Earl Barnsback, DIMURO, GINSBERG & LIEBERMAN, P.C., Alexandria, Virginia, for Appellee Lozano. **ON BRIEF:** Timothy C. O'Connell, O'CONNELL & O'CONNELL, Rockville, Maryland; Michael Doherty, RADIGAN, ROSENBERG & HOLMES, Arlington, Virginia, for Appellants. C. Torrence Armstrong, MCGUIRE, WOODS, BATTLE & BOOTHE, Richmond, Virginia, for Appellee Midland National Life; Joseph F. Cunningham, JOSEPH F. CUNNINGHAM & ASSOCIATES, Washington, D.C., for Appellee Mangelsdorf, Lewis & Davidson; Bernard J. DiMuro, DIMURO, GINSBERG & LIEBERMAN, P.C., Alexandria, Virginia, for Appellee Lozano.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this diversity case we must decide whether to allow reformation of an annuity contract that was designed to satisfy the financial obligations assumed in a settlement agreement. In the annuity contract, appellant Lumbermens Mutual Casualty Co. mistakenly named a different beneficiary than that specified in the settlement agreement. We find that prospective reformation of the contract to reflect the correct beneficiary accords with the intentions of the parties without causing prejudice to either party. We thus reverse the judgment of the district court and remand with instructions to reform the contract on a prospective basis.

I.

Eddy Castellon was injured in 1979 while working for a construction company. The company's insurer, appellant Lumbermens Mutual Casualty Co., settled Castellon's workers compensation claim, agreeing to pay him a lump sum of $5,000 followed by monthly installment payments of $1,048.49 for a period of twenty years. The settlement agreement stipulated that, in the event of Eddy's death, the payments would be made to Eddy's estate.

To finance its obligations, Lumbermens executed a single premium annuity contract with appellee Midland National Life Insurance Co., under which Midland would make the appropriate payments. Appellee Mangelsdorf, Lewis and Davidson, Inc., a specialist in arranging annuity contracts for funding settlement obligations, acted as Midland's broker-agent in effecting the agreement with Lumbermens. In the annuity contract application, Lumbermens inadvertently designated Elena Castellon (Eddy's wife at the time) as the beneficiary, instead of naming Eddy's estate as was specified in the settlement agreement. That mistake was memorialized in the contract, and lies at the source of this dispute.

The annuity contract was purchased and issued in September, 1982, and Eddy received installment payments for several years. On

3

April 14, 1989, Elena Castellon divorced Eddy. Eddy remarried soon thereafter, to Martha Ramirez, on October 8, 1989. Ten days after his wedding to Martha, Eddy died. Martha Ramirez then wrote a letter to Mangelsdorf asserting her claim to the annuity payments as the heir of Eddy's estate.

Either Lumbermens or Midland (or both) concluded that Elena Castellon was the proper beneficiary, and Midland began making the installment payments to Elena. In April, 1993, Martha Ramirez's attorney wrote a letter to Lumbermens asking that the payments be made instead to Eddy's estate as was envisioned in the settlement agreement. Lumbermens then requested that Midland change the beneficiary in the annuity contract to Eddy's estate and thereafter make payments to Martha, Eddy's heir. Midland refused, asserting that the terms of the annuity contract prevented Lumbermens from changing the beneficiary after Eddy's death.

On November 12, 1993, Lumbermens initiated several causes of action against Midland and Mangelsdorf, alleging breach of contract, negligence, breach of warranty, and breach of fiduciary duty. Lumbermens also sought to reform the annuity contract to name Eddy's estate as the beneficiary. Midland's answer interpled Elena and Eddy's estate. In its answer to the interpleader, the estate asked for reformation of the annuity contract. The district court rejected all of Lumbermens' claims on summary judgment, but held a bench trial to consider the estate's claim for reformation. Following trial, the court concluded that the estate had failed to establish mutual mistake of the parties or sufficient equities warranting reformation. This appeal followed.

II.

Before allowing reformation, courts normally require that both parties to a contract be mutually mistaken as to whether the written agreement expresses their intent; a unilateral mistake generally is insufficient. E.g., Langman v. Alumni Ass'n, 442 S.E.2d 669, 677 (Va. 1994); Ward v. Ward, 387 S.E.2d 460, 462 (Va. 1990). Here, the district court concluded that any mistake was unilateral, not mutual. According to the court, Lumbermens plainly erred in naming Elena as the beneficiary instead of Eddy's estate. But Midland and Mangels-

dorf, the court found, had no specific intention regarding the identity of the beneficiary, and thus "did not and could not have known that there was an error."

Such an inflexible application of the mutual mistake principle is uncalled for in the circumstances of this case. There is no question that the settlement agreement names Eddy's estate as beneficiary, and the undisputed purpose of the annuity contract was to fund the settlement agreement. Lumbermens of course had this objective in mind. And even assuming that Midland was unaware of this general purpose, Mangelsdorf, who acted as Midland's broker-agent, certainly shared Lumbermens' intent -- indeed, Mangelsdorf's specialty is arranging annuity mechanisms to finance settlement obligations. Midland, of course, would not have voiced any objection if Lumbermens had designated Eddy's estate as beneficiary in the annuity contract. That the general aim of the annuity contract was to fund the settlement agreement is sufficient for reformation; the parties need not have shared a specific intent to name a particular beneficiary. See 13 Samuel Williston, A Treatise on the Law of Contracts § 1535 (3d ed. 1961).

Moreover, the rules governing contractual mistakes "have traditionally been marked by flexibility," Restatement (Second) of Contracts, Ch. 6 Intr. Note (1981), and courts generally retain discretion to fashion relief as justice may require, id., § 158(2). Here, the equities plainly favor prospective reformation of the annuity contract. Without reformation, Lumbermens will continue to incur double liability (both to Elena and Martha) throughout the term of the annuity. Meanwhile, there are no persuasive countervailing arguments weighing against reformation. Neither party to the annuity would be prejudiced by prospectively reforming the contract to designate Eddy's estate as beneficiary. Lumbermens of course would welcome such relief, and it represented as much in oral argument before this court. Midland, meanwhile, expressed in argument that it would have no objection to redirecting the annuity payments on a prospective basis.

The district court identified two factors which it viewed as weighing against reformation, neither of which ultimately is compelling. First, the court suggested that Elena Castellon had an equitable interest in preventing reformation. Elena, however, was not a party to the

5

annuity contract (or, for that matter, to the settlement agreement). Any stake she has in preventing reformation stems solely from Lumbermens' mistaken designation of her as beneficiary of the annuity. Her interest is thus only by way of a windfall, the sort of interest that equity regards lightly. E.g., Prudential Ins. Co. of America v. S.S. American Lancer, 870 F.2d 867, 871 (2d Cir. 1989). And at any rate, prospective reformation of the annuity contract would allow Elena to retain any payments she has received thus far.

The district court also suggested that Lumbermens' lack of care in erroneously completing the annuity application presented an equitable basis for denying reformation. In the court's view, Lumbermens "knew or should have known" of its mistake and its "lack of diligence and care is what led to this whole dispute." It is well established, however, that the "mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care does not preclude . . . reformation." Restatement (Second) of Contracts§ 157 cmt. a (1981). In light of the lack of prejudice to the parties from prospective reformation, we believe that such relief is warranted.

III.

For the foregoing reasons, we reverse the judgment of the district court, and remand with instructions to reform the annuity contract on a prospective basis to name Eddy's estate as beneficiary, effective as of the date of this decision.

REVERSED AND REMANDED

6