COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judge Russell and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


GREGORY LEWIS, S/K/A
  GREGORY DAVID LEWIS
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1042-15-1               JUDGE WESLEY G. RUSSELL, JR.
                                                         MAY 17, 2016
LISA LEWIS


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                             Leslie L. Lilley, Judge

            Kevin E. Martingayle (Bischoff Martingayle, P.C., on briefs), for
            appellant.

            Keri A. Markiewicz (Michael E. Grey; Keri A. Markiewicz, P.C.;
            Grey and Arsenault, P.C., on brief), for appellee.


        Appellant, Gregory Lewis ("husband"), appeals an order of the circuit court finding that the

parties' separation agreement contained a drafting error resulting from a mutual mistake, ordering

that the agreement be reformed to effectuate the actual agreement of the parties by providing that

husband will continue to pay Lisa Lewis ("wife") spousal support until she marries or one of them

dies, and awarding wife a portion of the attorneys' fees she incurred in the proceedings below.  For

the reasons stated below, we affirm the judgment of the circuit court regarding its finding that the

parties' agreement contained a drafting error resulting from a mutual mistake and regarding the

reformation of the agreement, but reverse the circuit court's award of attorneys' fees.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

After thirteen years of marriage, the parties separated in January 2008. They entered into a property settlement agreement, dated March 10, 2009, which was "affirmed, ratified, and incorporated into" their final decree of divorce, entered by the circuit court on June 2, 2009. The agreement is signed by both parties, with each page initialed. Pursuant to their agreement, husband was to pay wife $1,500 monthly spousal support. The agreement further provided that the support "shall terminate upon remarriage or the death of either party." While the final decree specifically mentions the $1,500 monthly support obligation, it does not contain any terminating provisions beyond those found in the incorporated agreement. Wife was represented by counsel who drafted the agreement and the final decree; husband did not have counsel.

In the event of default under the agreement, "the cost and expense of any litigation or other action necessary to compel compliance will be the responsibility of the party who fails to comply or defaults." The agreement also provides that "[n]o oral statements or prior written matter extrinsic to th[e] Agreement shall have any force or effect. . . . All prior written or oral agreements between the parties are hereby revoked . . . ." In addition, "no change of any provision of this Agreement shall be effected in any manner whatsoever, except by subsequent written agreement of the parties . . . ." The final decree transferred to the juvenile and domestic relations court "all matters pertaining to child custody, visitation, and child support, spousal support, and the modification or enforcement thereof."

Although wife has not remarried, husband remarried in January 2012. Wife first learned of his remarriage in August 2013. Husband continued to pay wife the monthly support amount

through August 2013. He stopped the support payments at that time, arguing that, pursuant to the express terms of the agreement, his obligation to pay support had terminated upon his remarriage.[1]

On December 23, 2013, wife filed with the juvenile and domestic relations court a motion to show cause alleging husband was in default of his support obligation. On March 26, 2014, she filed a motion to "correct[] the scribner's [sic] error" in the agreement, arguing that the failure to include the word "her" before "remarriage" in the spousal support provision was a scrivener's error. After concluding that the parol evidence rule precluded evidence of the parties' prior discussions, the juvenile and domestic relations court found no clerical error and denied the motion. The juvenile and domestic relations court dismissed the show cause. Wife appealed to the circuit court.

The circuit court held a hearing on December 4, 2014. In addition to presenting the final decree and incorporated agreement, the parties offered testimony, over husband's objection that the parol evidence rule precluded consideration of any extrinsic evidence. Wife asserted that there was a mutual mistake in the drafting of the agreement that would allow for some extrinsic evidence to be presented.

Wife testified as to how they arrived at the amounts of child and spousal support. She further testified that she and husband had discussed terminating events and that it was understood that support would end upon her remarriage. She stated that the support "was supposed to terminate if I got remarried or either one of us died." She relayed that, although the parties discussed the

---

[1] Husband's argument is based on his belief that the modifying phrase "of either party" modifies both "remarriage" and "death" in the clause providing that support "shall terminate upon remarriage or the death of either party." We are not called upon in this appeal to interpret the spousal support provision of the agreement. We note, however, that traditional rules of English usage and grammar do not dictate such a reading. See Alger v. Commonwealth, 267 Va. 255, 259-60, 590 S.E.2d 563, 565-66 (2004) (noting that "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence. Thus a proviso usually is construed to apply to the provision or clause immediately preceding it." (internal quotation marks and citations omitted)). Under the last antecedent rule, the phrase "of either party" would modify only "death."

possibility of her future cohabitation with someone else, it was understood that she would not do that, so ultimately no mention of it was put in the agreement. When counsel asked, "Did you ever say [support termination] was going to be upon his remarriage?", wife answered, "Well, no."

Wife also testified regarding conversations she had with husband regarding the termination of support payments under the agreement. According to wife, husband, in August 2013, stated that "his [new] wife had found an error in the divorce decree" that would allow him to cease making support payments. From context, the "error" allegedly found was that the agreement did not explicitly tie termination of spousal support to wife's remarriage, but rather, arguably allowed its termination upon husband's remarriage. Husband did not make the September 2013 or any subsequent support payments.

The attorney who drafted the agreement and final decree on behalf of wife was called to testify, and wife waived the attorney-client privilege. The drafting attorney recalled that she and wife had discussed what wife wanted as terminating events. The drafting attorney testified that when wife visited her after the payments stopped, she advised wife that "that was not the intention of the agreement." The attorney testified that the wording of the agreement was not consistent with the instructions she had received; she said there was a mistake in the support provision by way of omission. She stated that "the paragraph on spousal support should have read 'upon her remarriage or the death of either party.'" Accordingly, her testimony indicated that "her" was missing before "remarriage."

Husband also testified as to the negotiations with wife respecting spousal support. He said that they discussed the dollar amount but nothing else about it. Counsel asked whether they discussed whether remarriage would end the support. Husband responded, "I do not recall it. I only recall a discussion of a dollar value to make it fair . . . ." When asked about any ambiguity in what he signed, he stated, "I felt like during the divorce I gave up a lot. I agreed with what was presented

- 4 -

to me." He expressed that, "Anything that had been discussed prior to that . . . it sort of got thrown out and I signed what I was given there that I agreed to." He stated that it was his understanding that the agreement as signed "would be the ruling document no matter what else." He said there was no mistake on his part about what the agreement contained.

With respect to his not terminating the support payments immediately upon his remarriage, husband explained that he continued to pay the support after his remarriage in order to ensure wife continued to allow him to maintain a relationship with his sons. He testified that he first realized and then told wife that he could stop paying as early as June 2013. He said, "I felt like . . . if I wanted to see my kids I had to pay this money whether I was legally required to or not." He admitted that, in rereading the agreement since the reopening of proceedings, "I understand there is a lot of things in there that I just didn't realize were there." He admitted that he had not looked at the agreement upon his remarriage, but stated that he could not have stopped the payments without having told anyone he was remarried.

After the hearing, the parties submitted briefs in support of their positions. On January 30, 2015, the court issued its letter opinion, finding that "that there is a mutual mistake in the Separation Agreement and that the parties intended to terminate spousal support upon the death of either party or the remarriage of the *recipient* spouse." The circuit court directed that the agreement "be reformed . . . to provide Ms. Lewis with the spousal support as set out in the parties' Separation Agreement." It also found husband in arrears of $24,000.

Further proceedings occurred regarding the proper language to be used in a final order, attorneys' fees, and interest. At a hearing, the judge expressly acknowledged that he "did not make a finding on the show cause . . . [or] any finding of [] contempt at [the December 4 hearing]." He noted "there was no evidence presented to me about the show cause." Ultimately, an order was entered on June 4, 2015; it reflected the court's letter opinion by "order[ing] that the Separation

Agreement be reformed to comply with the intent of the parties to provide Ms. Lewis with spousal support." Finding that the agreement authorized attorneys' fees, the court further ordered husband to reimburse wife $4,126.50 for such fees. The order makes no reference to an arrearage or the motion to show cause.

Husband appealed, challenging the circuit court's judgment in several respects. First, he asserts that Rule 1:1 deprived the circuit court of jurisdiction to reform the parties' agreement or modify the June 2, 2009 divorce decree. He also argues that the circuit court erred in finding that there was a scrivener's error as a result of a mutual mistake, in considering parol evidence in making its determination, in not finding that the agreement's merger and integration clauses precluded a finding of mutual mistake, and in allowing wife to take and benefit from inconsistent positions. Finally, he argues that the trial court erred in awarding wife a portion of her attorneys' fees incurred in the proceedings below.

Wife does not assign any cross-error. Nevertheless, in response to husband's appeal, wife requests, in addition to affirming the trial court's rulings with respect to reformation of the agreement, that we award spousal support starting from August 2013, award interest on that award, and award attorneys' fees and costs for the proceedings below and on appeal.

ANALYSIS

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness. Thus, we will not invalidate a court's decree unless the only reasonable interpretation thereof requires invalidation." Stiles v. Stiles, 48 Va. App. 449, 453, 632 S.E.2d 607, 609 (2006) (quoting Riggins v. O'Brien, 263 Va. 444, 448, 559 S.E.2d 673, 675-76 (2002)).

I.  The circuit court had jurisdiction to consider whether there was a scrivener's error resulting from a mutual mistake that required reformation of the parties' agreement and modification of the initial divorce decree.

Husband's jurisdictional challenge is based on Rule 1:1.  Rule 1:1 provides, in pertinent part, that "[a]ll final judgments, orders, and decrees . . . remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."  Husband reasons that, because the divorce decree was entered on June 2, 2009, the circuit court was barred from reforming the agreement or modifying the divorce decree in 2015, well more than twenty-one days after the initial decree was entered.

Rule 1:1, however, is subject to certain exceptions.  Pertinent here, Rule 1:1 does not prohibit a court from reforming a support agreement and modifying an incorporating divorce decree to correct a scrivener's error resulting from the parties' mutual mistake.  See Dorn v. Dorn, 222 Va. 288, 279 S.E.2d 393 (1981); see also Code § 8.01-428(B).[2]  Recognizing this,[3] husband argues that, because the agreement and initial decree were not the result of a mutual

_____

[2] Code § 8.01-428(B) provides that

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order.

Furthermore, "[c]lerical mistakes which may be corrected under the court's inherent power encompass errors made by other officers of the court including attorneys."  Harris v. Commonwealth, 222 Va. 205, 210, 279 S.E.2d 395, 398-99 (1981).

[3] Although husband correctly recognizes this exception to Rule 1:1, this amounts to a concession of law, and therefore, is not binding upon us.  Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (en banc), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007).  A court only may exercise jurisdiction that it actually possesses, and parties cannot confer jurisdiction through concessions or by agreement.  Afzall v. Commonwealth, 273 Va. 226, 230, 639 S.E.2d 279, 281-82 (2007) (holding that "jurisdiction cannot be waived . . . or given to a court by agreement or inaction of the parties").

mistake and do not contain a scrivener's error, the circuit court lacked jurisdiction to award wife relief.

This circular reasoning ignores that, to reach such a conclusion, the circuit court necessarily had to consider the question and reach the merits of wife's claim of a scrivener's error resulting from a mutual mistake. A court always has jurisdiction to consider whether it has jurisdiction even if such a determination requires reaching the merits of the case. Rutter v. Oakwood Living Ctrs. of Va., Inc., 282 Va. 4, 13, 710 S.E.2d 460, 464 (2011). Thus, even in cases in which a trial court has rejected a claim of mutual mistake made more than twenty-one days after the divorce decree was entered, Virginia's appellate courts have at least implicitly recognized that the trial court had jurisdiction to answer the question on the merits. See, e.g., Ward v. Ward, 239 Va. 1, 387 S.E.2d 460 (1990); Brannon v. Brannon, No. 1722-06-4, 2007 Va. App. LEXIS 381 (Va. Ct. App. Oct. 9, 2007); Spears v. Spears, No. 1400-94-3, 1995 Va. App. LEXIS 198 (Va. Ct. App. Feb. 28, 1995).[4] Accordingly, the circuit court had jurisdiction to resolve wife's claim of a scrivener's error resulting from a mutual mistake.[5]

---

[4] Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority. Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012).

[5] The procedural posture of the case was unusual. The case started as a rule to show cause in the juvenile and domestic relations court. There, a motion to correct a scrivener's error in the agreement and incorporating circuit court decree was added. Although the proper way to initiate such a challenge would have been a direct action in the circuit court alleging a scrivener's error as a result of a mutual mistake, the parties did not and do not object to the circuit court entertaining the issue in the manner in which it arose. Because the circuit court had jurisdiction to decide the issue raised by the parties, it is appropriate for us to review that decision in this appeal.

II.  The evidence below was sufficient to allow the circuit court to conclude that the parties' agreement and the incorporating decree contained a scrivener's error as a result of a mutual mistake.

Turning to the merits of wife's claims, the ability of courts to reform agreements or modify orders containing errors resulting from mutual mistakes has long been recognized.  Courts have

> "jurisdiction to reform written instruments . . . [w]here there is a mutual mistake, -- that is, where there has been a meeting of minds, -- an agreement actually entered into, but the contract, . . . in its written form, does not express what was really intended by the parties thereto . . . .  In such cases the instrument may be made to conform to the agreement of transaction entered into according to the intention of the parties."

Larchmont Props., Inc. v. Cooperman, 195 Va. 784, 790-91, 80 S.E.2d 733, 737-38 (1954) (quoting 4 Pomeroy's Equity Jurisprudence § 1376, at 1000 (5th ed.)); see also 27 Richard A. Lord, Williston on Contracts § 70:19, at 255 (4th ed. 2003).  Indeed, "[e]quity has undoubted jurisdiction to reform an instrument if it does not express the intent of the parties[, and] should give effect to the true intent of the parties . . . ."  Gibbs v. Price, 207 Va. 448, 449-50, 150 S.E.2d 551, 552 (1966).  In short, reformation for mutual mistake allows a court to change the written document to reflect the *actual* agreement by the parties; it does not allow a court to alter that agreement by changing its terms to those that the court finds appropriate or that one of the parties wished it had obtained in negotiations.

The doctrine of mutual mistake applies to reforming property settlement and support agreements that are incorporated into divorce decrees.  In addition to the cases cited above where the remedy of reformation of a divorce and support agreement was considered but rejected, we have previously affirmed a trial court's decision to reform a support agreement based on finding a mutual mistake.  Hughes v. Hughes, No. 1745-00-1, 2001 Va. App. LEXIS 348 (Va. Ct. App. June 19, 2001).

Although the power of a court to reform a contract that contains a drafting error resulting from a mutual mistake is well-established, the use of such power is limited to specific circumstances and by a demanding standard of proof. The party requesting reformation based on a mutual mistake bears the burden of establishing that a mutual mistake occurred and what correction should be made. Bankers Fire Ins. Co. v. Henderson, 196 Va. 195, 206, 83 S.E.2d 424, 431 (1954) (citing Temple v. Va. Auto Mut. Ins. Co., 181 Va. 561, 569, 570, 25 S.E.2d 268, 271 (1943)). "To support reformation on the ground of mutual mistake, the proof 'must be clear and satisfactory, leaving but little, if any, doubt of the mistake.'" Gibbs, 207 Va. at 450, 150 S.E.2d at 552 (quoting French v. Chapman, 88 Va. 317, 322, 13 S.E. 479, 481 (1891)).

Although wife faced a significant evidentiary burden in the circuit court, we note that "[w]e will not disturb the trial court's decision where it is based on an *ore tenus* hearing, unless it is plainly wrong or without evidence in the record to support it." Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992) (internal quotation marks and citation omitted). Furthermore, we will consider the evidence in the light most favorable to wife, the prevailing party below. Galloway v. Galloway, 47 Va. App. 83, 86, 662 S.E.2d 267, 268 (2005). Thus, the question before us, viewing the evidence in the light most favorable to wife, is whether the circuit court reasonably could conclude that she clearly had established the existence of a drafting error as a result of a mutual mistake.

The evidence is sufficient to support the circuit court's conclusion. Both wife and the drafting attorney testified unequivocally that the parties intended for support payments to terminate on the wife's remarriage, but not if husband remarried. This testimony was buttressed by husband's admission, introduced through wife's testimony, that his new wife had discovered a "mistake" in the agreement that allowed him to stop paying support upon his remarriage. We cannot conceive of

- 10 -

how husband could classify this as a "mistake" if the parties had not actually agreed that support payments would terminate on wife's remarriage, but not if husband remarried.

That the parties had agreed that support would continue unless wife remarried also finds support in husband's conduct. It is undisputed that he remarried in January 2012 and continued paying monthly spousal support for more than a year and a half after his remarriage. This strongly suggests that he knew he had agreed that support would terminate on wife's remarriage but not his. The circuit court, sitting as factfinder, was free to reject as self-serving his testimony that he made the payments for reasons other than his obligation to do so under the agreement reached by the parties. See Carosi v. Commonwealth, 280 Va. 545, 554-55, 701 S.E.2d 441, 446 (2010) (recognizing that a factfinder "is not required to accept the self-serving testimony . . . of witnesses with a potential bias . . . , but may rely on such testimony in whole, in part, or reject it completely").

Finally, the trial court's conclusion is further supported by husband's concession in the circuit court that a provision that would allow him to terminate support payments upon his remarriage would be "unusual." Although parties generally are free to enter into "unusual" agreements, husband's concession, coupled with the other evidence, provides additional support for the trial court's conclusion that the agreement contained a drafting error as a result of a mutual mistake.

Husband argues that wife did not carry her evidentiary burden because he testified that there was no mutual mistake, essentially making it impossible for the circuit court to reasonably conclude to the required standard of proof that there was a mutual mistake. This misunderstands wife's burden.

Although the standard of proof necessary to permit reformation of an agreement on the basis of mutual mistake is high, a party can meet it even if there is evidence to the contrary. See

27 Lord, supra, § 70:13, at 231 ("A contract may still be reformed when a material, mutual mistake is made, even though one of the parties denies that a mistake was made." (footnote omitted)). Evidentiary disputes in these cases are to be resolved by the factfinder, who is in a position to "assess the credibility of witnesses and the probative value to be given their testimony." Langman v. Alumni Ass'n of the Univ. of Va., 247 Va. 491, 504, 442 S.E.2d 669, 677 (1994). The factual findings of the circuit court in cases dealing with allegations of mutual mistake will be reversed on appeal only if "plainly wrong." Id. For the reasons stated above, the circuit court's conclusion that the evidence clearly established that the written agreement contained a drafting error as a result of a mutual mistake is not plainly wrong, and therefore, we affirm the circuit court's conclusion regarding the same.

> III. The circuit court did not err by taking parol evidence on the question of whether the agreement contained a drafting error as a result of a mutual mistake.

Husband argues that the circuit "court should have excluded [wife's] parol[] evidence that contradicted" his interpretation of the parties' agreement, which he contends was unambiguous. This argument ignores the long-settled principle that

> *in the suits to reform a written instrument on the ground of a mutual mistake, parol evidence is always admissible* to establish the fact of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement which the parties actually made . . . .

Fudge v. Payne, 86 Va. 303, 307, 10 S.E. 7, 8 (1889) (emphasis added). Because the issue before the circuit court was whether a mutual mistake existed, the circuit court did not err in considering parol evidence.

> IV. The agreement's merger and integration clause did not preclude the circuit court's finding that the agreement contained a drafting error as a result of a mutual mistake.

Husband argues that the remedy of reformation based on a mutual mistake was not available because the parties' agreement contained a merger and integration clause. Although merger and

integration clauses are relevant to the question, they do not preclude a court from reforming an agreement that contains a drafting error based on a mutual mistake. Cf. Miller v. Reynolds, 216 Va. 852, 854-56, 223 S.E.2d 883, 885 (1976) (holding that the merger doctrine applicable to the execution of deeds does not apply in cases of mutual mistake). As a noted commentator has observed,

> [i]f a contract states that it integrates all prior agreements, merging them into this agreement, and that there are not other understandings than what can be found in this contract, then this integrated contract may not be varied by parol [evidence] *in the absence of mutual mistake*, nor will it be rescinded or redrafted by the court if one of the parties turns out to have made a bad deal or become dissatisfied with its provisions.

28 Lord, supra, § 70:142, at 33 (emphasis added). Because the purpose of reformation after a finding of mutual mistake is to give effect to the agreement the parties *actually* reached, the existence of a merger and integration clause does not preclude a court from granting such a remedy in the face of a proven mutual mistake.

V. Wife did not impermissibly take and benefit from inconsistent positions.

Husband argues that wife was permitted to take and benefit from inconsistent positions. He contends that wife "asserted the [agreement's] validity by filing a sworn show cause petition seeking relief based upon the final decree and [the agreement]" only to abandon this position by asserting that the final decree and agreement contained an error requiring reformation. He also contends that wife took inconsistent positions by initially arguing that the agreement contained a "clerical error" before arguing that the agreement contained a mutual mistake. Both of husband's contentions are mistaken.

Wife never contended that the parties' agreement and the final decree were invalid. She always maintained that the parties were divorced and that the terms of their divorce, including support payments, were governed by the agreement the parties had reached as incorporated in the

- 13 -

final decree. Only when her attempts to enforce the terms to which the parties actually had agreed were frustrated by husband's position that his discovery of a "mistake" in the agreement allowed him to cease making support payments did she seek the remedy of reformation. Such actions are wholly *consistent* with the position she has asserted throughout— that the parties' agreement in 2009 required husband to continue making support payments in the event of his remarriage.

There also is no inconsistency in asserting that a written agreement contains a scrivener's error and that such error is the result of a mutual mistake. See <u>Dorn</u>, 222 Va. at 291, 279 S.E.2d at 394 (recognizing that a "mutually unintended drafting error" could be corrected under the clerical error provision of Code § 8.01-428(B)). Although all mutual mistakes do not result in scrivener's errors, virtually all scrivener's errors are the result of mutual mistakes. Assuming parties acting in good faith, agreements containing scrivener's errors would not be signed unless both parties mistakenly believed that the writing set forth their actual agreement. Simply put, there is nothing inconsistent with maintaining that an agreement contains a scrivener's error and that said error is the result of a mutual mistake.[6]

VI. The circuit court erred in awarding wife a portion of the attorneys' fees she incurred in the proceedings below.

Husband challenges the circuit court's award of $4,126.50 in attorneys' fees to wife based on the circuit court's conclusion that such an award is "authorized by the parties['] Separation Agreement." Specifically, husband argues that an award of fees under the terms of the agreement is unwarranted because "he did exactly what the [agreement] authorized pursuant to the plain

---

[6] Husband also argues that the fact that wife's counsel drafted the agreement renders the error, if any, wife's unilateral mistake. This view is mistaken. 27 Lord, <u>supra</u>, § 70:93, at 499 ("Where there is a mutuality of assent but the resulting document intended to express such agreement fails to do so by reason of the mistake of the drafter, it is immaterial who employed the scribe as the mistaken agreement was merely the occasion of the parties executing a paper that did not express their common intent.").

- 14 -

language . . . prepared by [wife's] divorce lawyer. It was [wife] who then came to court seeking a change in the language of the" agreement. For the reasons that follow, we agree with husband.

Generally, whether to award attorneys' fees in proceedings related to divorce decrees "is a matter submitted to the sound discretion of the trial court and reviewable on appeal only for an abuse of discretion." Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (internal quotation marks and citations omitted). Nevertheless, "[a]n abuse of discretion can be found if the trial court uses an improper legal standard in exercising its discretionary function." Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003) (internal quotation marks and citation omitted). Pursuant to Code § 20-109, when the parties have entered into a separation agreement, "no decree or order directing the payment of . . . counsel fee[s] . . . , shall be entered except in accordance with that stipulation or contract." Thus, failure to abide by the parties' agreement in the award of attorneys' fees constitutes an abuse of discretion. See Rutledge v. Rutledge, 45 Va. App. 56, 67, 608 S.E.2d 504, 509 (2005).

Here, the parties' agreement provided, "[i]n the event of any default of either party hereto to the terms of this Agreement, the cost and expense of any litigation or other action necessary to compel compliance will be the responsibility of the party who fails to comply or defaults." "'The noun "default" is defined as a "failure to do something required by duty or law."'" Stroud v. Stroud, 54 Va. App. 231, 239, 677 S.E.2d 629, 633 (2009) (quoting Clevert v. Soden, Inc., 241 Va. 108, 111, 400 S.E.2d 181, 183 (1991)).

The proper vehicle for arguing that husband was in *default* of his legal obligation to pay support and thus subject to an award of attorneys' fees was the show cause proceeding that wife initiated in the juvenile and domestic relations court and appealed to the circuit court. The circuit court, however, did not rule in wife's favor on the show cause or issue any ruling on the show cause at all. Rather, from the bench, the circuit court stated that it "did not make a finding on the show

cause . . . [or] any finding of [] contempt" and that "there was no evidence presented to me about the show cause." By declining to rule on the show cause, the circuit court did not make the required finding of default, and therefore, erred in awarding the attorneys' fees. Accordingly, we reverse the circuit court's award of $4,126.50 in attorneys' fees to wife.[7]

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court regarding its finding that the parties' agreement contained a drafting error resulting from a mutual mistake and regarding the reformation of the agreement, but reverse the circuit court's award of attorneys' fees.[8]

Affirmed in part,<br>
and reversed and<br>
final judgment in part.

---

[7] We acknowledge that we have affirmed the trial court's conclusion that the parties' agreement was for husband to continue to pay support after his remarriage. However, wife concedes that it would be anomalous to find that the agreement and incorporating decree required reformation (as she requests) and that husband, prior to the circuit court ordering reformation, was in default of the terms of the written agreement and order that required reformation.

[8] We deny the requests of both parties for an award of attorneys' fees and costs incurred on appeal. We do not reach the remainder of wife's requests because she did not assign error to the circuit court's actions (or lack thereof) related to those issues.